Monica PASTEWKA et al., Plaintiffs,

v.

TEXACO, INC. and Texaco Panama, Inc.,
corporations, Defendants.

Civ. A. Nos. 4550–4561, 76–54.

United States District Court,
D. Delaware.

Aug. 11, 1976.

John M. Bader, of Bader, Dorsey &
Kreshtool, Wilmington, Del., for plaintiffs;
Harvey Goldstein, of Fuchsberg & Fuchs-
berg, and MacDonald Deming, of Haight,

Gardner, Poor & Havens, New York City, of counsel.

Edmund N. Carpenter, II, and James H. Gilliam, Jr., of Richards, Layton & Finger, Wilmington, Del., for defendants; Poles, Tublin, Patestides & Stratakis, New York City, of counsel.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

The question presented is whether on the facts of this case plaintiffs are precluded from pursuing a cause of action in the District of Delaware after dismissal of an identical action on the grounds of *forum non conveniens* has been upheld by a divided panel of the Second Circuit Court of Appeals. Procedural facts, unfortunately somewhat detailed but nonetheless essential to an understanding of a resolution of the question, are set forth below:

Plaintiffs are the owners of cargo aboard the M.V. Brandenburg, a German vessel, and the personal representatives of twelve German crewmen who died from injuries sustained in a collision between the vessel and the submerged wreckage of the S/T Texaco Caribbean. The latter vessel was owned by defendant Texaco Panama, Inc. (Texpan) a wholly owned subsidiary of defendant Texaco, Inc., (Texaco). She had been sunk one day earlier on January 11, 1971, due to a collision, in the English straits approximately twelve miles from the coast of Great Britain, with the MLV Paracas, a Peruvian ship.

Thereafter, litigation commenced in England[1] and this country. Commencing November 27, 1972, twelve identical individual law suits against Texaco and Texpan were filed in the Southern District of New York by the same attorneys on behalf of the estates of the twelve deceased German crewmen of the Brandenburg, the last being lodged with the Clerk of the Court on January 8, 1973.

The following day the estates of the twelve seamen filed a complaint in this district "for the purpose of protecting the rights of litigating plaintiffs, to be activated only in the event that the suit in New York is dismissed."[2] Thereafter, the parties, reciting that the New York and Delaware actions were "between the same parties" and "[involve] the same subject matter"[3] entered into a stipulation approved by the court which had the practical effect of staying the Delaware action pending the outcome in the Southern District of New York.[4]

In addition to the suits mentioned above, the owners of the Brandenburg hull and cargo, represented by the same counsel,[5] filed complaints against Texpan only in the Southern District of New York. A companion action was not contemporaneously filed in the Delaware district in 1973.

---

1. The Second Circuit noted the following actions were pending in England: (1) owners of the Brandenburg's cargo against the Paracas, Texaco Caribbean, and Trinity House (a British corporation with the alleged statutory duty of locating and marking wrecks off the coast of England); (2) Texaco Caribbean against the Paracas; (3) the Paracas against Texaco Caribbean; and (4) the Brandenburg against Trinity House. At oral argument counsel advised the court that the actions in England have been lying dormant pending the outcome of actions filed in this country.

2. Doc. 12, pp. 4–5.

3. Comparison of the complaints filed in the Southern District of New York and this district reveals they are substantively identical when allowance is made for the necessary differences in jurisdictional allegations as well as differences in relief to be afforded under the statutes applicable in the respective jurisdictions. While the estates and substantive causes of action are identical, the caption also differs because New York County has a Public Administrator while the State of Delaware permits suits in the names of the appropriate personal representatives. Apparently recognizing that all differences between the complaints filed in the two districts were technical, counsel have neither argued nor suggested that the differences should affect the outcome of the matter *sub judice.*

4. Doc. 4.

5. Counsel for the twelve estates did and do not represent either the owner of the hull or the owners of the cargo.

On March 2, 1972, all of the actions pending in the Southern District of New York were consolidated "for all purposes."[6] On the same date defendants filed a motion to dismiss as to Texpan on the grounds of *forum non conveniens* and "lack of jurisdiction of the controversy . . ." and as to Texaco on "lack of jurisdiction of the controversy" and failure to state a claim upon which relief could be granted.[7]

The filing of the motion to dismiss set the stage for protracted litigation centering upon plaintiffs' efforts to meet the *forum non conveniens* motion by bolstering its theory that Texpan and Texaco and their New York officers were liable for their failure to properly supervise, locate, buoy, and advise shipping of the location of the sunken wreckage of the Texaco Caribbean. The intensity of that litigation, much of which revolved about discovery, is demonstrated by its utilization of more than 300 printed pages of record,[8] including 20 affidavits, 44 docket entries, 9 legal memoranda, numerous letters to the magistrate and the district judge, and 3 magistrate reports. While intense, plaintiffs would also describe the New York litigation as disastrous. First, they did not get all of the discovery which they sought (much of which is sought in the Delaware action). The trial judge

entered orders[9] confirming the magistrate's recommendation for limited discovery and, by an additional order, further limited the discovery permitted by the magistrate,[10] leading the dissenting Circuit Court judge to observe that plaintiffs were "placed in a 'Catch-22' situation."[11] Secondly, and more important, the magistrate recommended a dismissal as to all plaintiffs on the theory of *forum non conveniens*,[12] which was accepted and adopted by the district judge,[13] affirmed on appeal by the Second Circuit[14] with certiorari denied by the Supreme Court during January 1976.[15]

After the Second Circuit rendered its decision adverse to plaintiffs, the Delaware litigation became active. Defendants filed a motion to dismiss the only existent Delaware complaints (the twelve estates) grounded upon *forum non conveniens*. After full briefing but prior to oral argument the cargo owners,[16] represented by the same counsel as in the Southern District of New York, filed, on February 4, 1976, a complaint in this district, which, but for necessary changes in jurisdictional allegations and the addition of Texaco as a defendant, was identical to the complaint previously dismissed in New York. Following a conference held on February 25, 1976, the cargo owners' complaint was consolidated with

**6.** *Appendix on appeal to the Second Circuit Court of Appeals from the District Court for the Southern District of New York (hereinafter referred to as App. __a).*

**7.** App. 58a–59a. Following the consolidation, not unsurprisingly, the twelve estates (156a–160a, 174a–175a, 236a–241a, 257a–266a, see also 347a–355a), the cargo plaintiffs (see e. g. App. 177a–179a, 186a–189a, 218a–221a, 236a–241a, 252a–254a, 267a–280a, 336a–339a, 357a–359a), the magistrate (161a–167a, 232a–235a, 360a–378a), the district judge (176a, 247a, 379a, but cf. 380a) and the Second Circuit Court of Appeals, *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448 (2d Cir. 1975) treated the consolidated actions as if Texaco were a named defendant in the cargo plaintiffs' complaint and as if the defense of *forum non conveniens* had been raised by Texaco. It is therefore understandable that plaintiffs, in opposing defendants' motions in the Delaware District, neither briefed nor argued that the outcome in this district should be affected by the technical deficiencies of the New York pleadings. To do so

would require elevation of form over substance and ignore the actual reality of the New York proceeding.

**8.** App. 51a–188a, 205a–380a.

**9.** App. 176a.

**10.** App. 247a.

**11.** *Fitzgerald v. Texaco, Inc., supra,* 521 F.2d at 456, n. 1.

**12.** App. 360a–378a.

**13.** App. 379a.

**14.** *Fitzgerald v. Texaco, Inc., supra.*

**15.** 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976).

**16.** The owners of the hull of the Brandenburg did not file a complaint in this district.

the previously consolidated complaints of the twelve estates and all plaintiffs submitted discovery requests patterned after, but somewhat more limited than those denied in the Southern District of New York. In addition, at the request of the court, counsel agreed to brief the issue of preclusion of assertion of the causes of action and requests for discovery of consolidated plaintiffs in Delaware by reason of the adverse decisions of the magistrate, accepted and adopted by the district judge and affirmed by the Second Circuit Court of Appeals. It is that discrete issue which is now ripe for determination.

Any analysis must start with the meaning of *forum non conveniens* and a court's role in application of the doctrine. "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The *forum non conveniens* doctrine "involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else." *Norwood v. Kirkpatrick,* 349 U.S. 29, 31, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955), quoting with approval language from *All States Freight v. Modarelli,* 196 F.2d 1010 (3d Cir. 1952). The ultimate *forum non conveniens* inquiry "is whether the retention of jurisdiction by the district court would fairly serve the convenience of the parties and the ends of justice." *Hoffman v. Goberman,* 420 F.2d 423, 426 (3d Cir. 1970). "It is well settled that under the rule of *forum non conveniens* the refusal of a district court to entertain a suit in admiralty is within its sound discretion." *Mobil*

*Tankers Co. v. Mene Grande Oil Co.,* 363 F.2d 611, 613 (3d Cir. 1966).

The decision of the district judge of the Southern District of New York in dismissing upon the ground of *forum non conveniens* is viewed as a discretionary decision based upon its inherent power to decline the exercise of its jurisdiction. Review by the Second Circuit Court of Appeals was necessarily limited to "whether or not the district court abused its discretion in granting the motion to dismiss the action on the ground of *forum non conveniens.*" [17] The narrow issue posed for decision by this court then becomes whether, under the facts presented in this case in this district, the *forum non conveniens* discretionary decision of the New York District Court is binding upon this court.

Plaintiffs acknowledge the New York decision should be given due consideration when this court considers the merits of the *forum non conveniens* dismissal motion, but argue that it should not be considered as binding precedent so as to preclude reaching the merits of that motion. They concede that they can point to no favorable factors or factual considerations [18] which would differentiate the Delaware district from the Southern District of New York for purposes of a *forum non conveniens* inquiry. Instead, they urge the Third Circuit would have reached a different result in that this circuit would have accorded a different weight to some of the criteria evaluated in reaching a *forum non conveniens* determination. Specifically, plaintiffs assert they would have been accorded a more friendly reception on their discovery going to disclosure of witnesses' identities and testimony and requests for admission. They further argue this circuit would have accorded more

---

17. *Fitzgerald v. Texaco, Inc., supra,* 521 F.2d at 450.

18. At oral argument, plaintiffs urged calendar congestion was a factor considered by the New York court in arriving at its decision. The Second Circuit thought otherwise. *Fitzgerald v. Texaco, Inc., supra,* 521 F.2d at 457. Otherwise, plaintiffs conceded at oral argument they

could identify no objective criteria or material facts in support of those criteria which caused Delaware to be preferred over the Southern District of New York for *forum non conveniens* purposes. It is therefore understandable that no such criteria or material facts underlying that criteria were mentioned in plaintiffs' briefs.

weight to the existence and adequacy of an alternate forum and would have placed stress on "flag of convenience" criteria.

When subjected to close scrutiny plaintiffs' position is that this Court should undertake to make a second discretionary *forum non conveniens* determination on identical, objective criteria and identical material facts underlying the application of those criteria as presented to the Southern District of New York in the hope that this court might evaluate the same criteria and facts in a different manner. Failure to differentiate any objective criteria or material facts underlying the application of those criteria in each forum distinguishes *Parsons v. Chesapeake & Ohio R. Co.*, 375 U.S. 71, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963) and *Domingo v. States Marine Lines*, 340 F.Supp. 811 (S.D.N.Y.1972) and cries for application of judicial preclusion irrespective of the label applied—*res judicata*, collateral estoppel or direct estoppel.[19]

**19.** The term "judicial preclusion" is an umbrella term employed both to take cognizance of and avoid differentiating between the judicially created preclusion doctrines of *res judicata*, collateral estoppel and direct estoppel. The confusion as to the appropriate doctrinal label is apparent from the discussions by the courts and commentators, but several broad principles seem to have emerged: In *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597–598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948), the Supreme Court stated:

"The general rule of *res judicata* applies to repetitious suits involving the *same causes* of action. . . .

But where the second action between the same parties is upon a different cause or demand, the principle of *res judicata* is applied more narrowly. . . . In this sense, *res judicata* is usually and more accurately referred to as estoppel by judgment, or collateral estoppel."

However where *res judicata* is applied to a jurisdictional decision, there has been a recognition that its doctrinal application might require different terminology.

"It is sometimes asserted that a decision has *res judicata* effect only if it is on the merits. But this overstates the case, for as the Supreme Court has said, 'The principles of *res judicata* apply to questions of jurisdiction as well as to other issues.' [citations omitted] It is true that the *res judicata* effect of a jurisdictional decision is more limited than its effect where the decision is on the merits, for it is not binding as to all matters which could have been raised. But a non-merits judgment of this type, whether its abating effect be termed direct estoppel (Restatement, Judgments § 49 (1942) or simply *res judicata*, is conclusive as to matters *actually* judged." *Acree v. Air Line Pilots Assoc.*, 390 F.2d 199, 203 (5th Cir. 1968).

Direct estoppel, has been discussed in Comment b to § 49 of the Restatement, Judgments (1942) as

"b. *Effect of judgment as to issues decided.* Although, where the judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action

on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action. Thus, if the action was dismissed because of the nonjoinder of a third person as defendant, and the plaintiff thereafter brings an action on the same cause of action without joining the third person, the plaintiff is not entitled again to relitigate the question whether the third person was a necessary party.

This is an instance of direct estoppel rather than collateral estoppel (see § 68), since the second action is based upon the original cause of action (see § 45(c) and Comment d thereon). The matter actually litigated and determined is res judicata between the parties in a subsequent action involving the same matter, whether the subsequent action is based upon the same or a different cause of action."

From these authorities it can be concluded, albeit with some uncertainty, that the term *res judicata* applies to the preclusion of relitigation of an entire cause of action on the merits; collateral estoppel precludes relitigation of identical issues on the merits when raised in connection with a different cause of action; and direct estoppel precludes relitigation of non-merits jurisdictional questions. Applying this formulation to the matter *sub judice,* the most appropriate label would appear to be direct estoppel, except that *forum non conveniens* is not in a strict sense jurisdictional and is discretionary with the court. Avoiding all such labels one could simply explain the preclusion of relitigation here as the application of *res judicata* principles in a non-merits context. The uncertainty of which label to apply is compounded and further confused when one recognizes that use of any such label here might incorrectly be deemed to prohibit examination of objective criteria and underlying facts for material differences, an essential prerequisite to a second court's determination of whether it should be bound by a prior *forum non conveniens* determination between the same parties, filing similar complaints and proceeding upon identical legal theories. See discussion *infra* 646.

Originally, judicial preclusion surfaced as the doctrine of *res judicata* and was applied only where there was a previous judgment which was valid, final and on the merits. However, it has long been held that "the principles of *res judicata* apply to questions of jurisdiction . . . ." *American Surety Co. v. Baldwin,* 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932); *Acree v. Air Line Pilots Assoc.,* 390 F.2d 199 (5th Cir. 1968); *Valverd v. Klosters Rederi, A/S,* 1975 AMC 2133 (S.D.Fla. 1974). Restatement of Judgments §§ 45, Comment (d), 49 and 70, Comment (b). If this be so, it is immaterial that the New York non-merits jurisdictional judgment may be decided differently by this or any other court. *Cf. Estevez v. Nabers,* 219 F.2d 321 (5th Cir. 1955). There appears to be no reason why the principles of judicial preclusion should not be extended to where there has been a reviewable *forum non conveniens* discretionary decision not to exercise authorized jurisdiction in the specialized factual situation presented by this case. *Cf. Koziol v. The Fylgia,* 230 F.2d 651 (2d Cir. 1956). I cannot rationalize why the same parties who have previously received adverse *forum non conveniens* decisions at the district and the circuit court levels should be permitted to seek a more favorable resolution in a different district and circuit on the same complaints encompassing identical legal theories absent an ability to demonstrate any difference in objective criteria or material facts underlying those criteria. *Cf. Parsons v. Chesapeake & Ohio R. Co., supra,* 375 U.S. at 72–73, 84 S.Ct. 185, 11 L.Ed.2d 137. At some point there should be finality for both the litigants and the courts. For the litigants, one thorough airing on a non-merits point should be enough. For the courts, there is achieved judicial economy inherent in avoidance of duplicative, successive litigation. Rather than encourage forum shopping,[20] the federal system, heavily overburdened with litigation which must be heard, should not countenance, and cannot afford the luxury of permitting the same plaintiff to litigate the same issue with no demonstration of changed circumstance which would affect the outcome. Therefore, disagreement, if any, with the New York *forum non conveniens* discretionary decision would be insufficient to give the entire *forum non conveniens* issue a second, fresh airing.

In summary, it is held that this court is bound by a prior discretionary determination of a *forum non conveniens* defense by a trial court of general jurisdiction from which an appeal lies, where the parties, complaints and legal theories are, for all practical purposes, identical, and plaintiffs have made no showing that there is any difference between districts as to the objective criteria or material facts underlying application of those criteria for *forum non conveniens* purposes. This ruling turns on its peculiar facts. It is emphasized that not every discretionary determination of *forum non conveniens* will necessarily preclude a second court from reconsidering the issue. If a second court were proffered different objective criteria or different facts underlying the application of those criteria, the necessity for taking a "second look" would be evaluated in that context. That has not occurred in this case. Consequently, an order will be entered which will have the effect of dismissing plaintiffs' complaints.

Submit order conditioned upon defendants' submitting to the jurisdiction of the English courts and waiving any defense of the statute of limitations as to any claims against them.

**20.** The cargo carrier, as distinguished from the twelve estates, filed suit in this district only after the Second Circuit's affirmance of the New York District Court's dismissal on *forum non conveniens* grounds. Although a litigant in such circumstances should ordinarily be permitted to seek a more convenient forum, the attempt here to bring suit in a jurisdiction which is concededly no more convenient can only be characterized as forum shopping.