**Amalia Herbira ZORIANO SANCHEZ, etc., et al., Plaintiffs-Appellants,**

**v.**

**CARIBBEAN CARRIERS LIMITED et al., Defendants-Appellees.**

**No. 101, Docket 76–7213.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1976.

Decided March 30, 1977.

Thomas M. Breen, New York City, for plaintiffs-appellants.

George T. Delaney, New York City (Cichanowicz & Callan and Victor S. Cichanowicz, New York City, on the brief), for defendants-appellees.

Before HAYS, ANDERSON and GURFEIN, Circuit Judges.*

ROBERT P. ANDERSON, Circuit Judge:

This action arose out of the loss at sea of the M/V Caribe, which sank about October 10, 1971, while on a voyage from Barranquilla, Colombia to Santo Domingo, Dominican Republic. The United States Coast Guard conducted a search for the M/V Caribe when she was reported missing, thereafter declared that it could not find the vessel, and concluded that the Caribe was riding below her Plimsoll Marks and probably capsized.

An action under the General Maritime Law and the Jones Act, 46 U.S.C. § 688, was instituted by relatives of 25 deceased seamen in the United States District Court for the District of Puerto Rico. Defendants-appellees then moved to dismiss the complaint on the grounds that as to the Jones Act claims, the district court lacked jurisdiction, and that as to general maritime law claims, the court should decline jurisdiction in its discretion. The district court in Puerto Rico, in an unreported opinion granting defendants-appellees' motion to dismiss, stated that uncontradicted affidavits of defendants-appellees indicated that the M/V Caribe was not the property of either Caribbean Carriers, or Bordas Dominican Co. or Bordas & Co., as the Caribe was the property of Caribbean Carriers Ltd. only until June 25, 1971, when it was sold to Bordas Linea Dominicana, a corporation organized and existing under the laws of the Dominican Republic. The ship was flying the Dominican flag; was in transit between Colombia and Santo Domingo with a crew comprised solely of Colombian and Dominican seamen hired in those countries, respectively; had not been in any United States

port for more than a year; had its base of operations in Santo Domingo; any witnesses or documentary evidence would be in the control of third parties or Bordas Linea Dominicana, outside the district court's jurisdiction; and all plaintiffs in the action were citizens of the Dominican Republic. On the above facts, the district court in Puerto Rico found that it could not exercise jurisdiction under the Jones Act and in so holding relied upon Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); O'Neill v. Cunard White Star, Ltd., 160 F.2d 446 (2d Cir.), cert. den., 332 U.S. 773, 68 S.Ct. 56, 92 L.Ed. 358 (1947); Taylor v. Atlantic Maritime Co., 179 F.2d 597 (2d Cir.), modified, 181 F.2d 84 (1950), cert. den. sub nom., Atlantic Maritime Co. v. Rankin, 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1350 (1951); and Garis v. Compania Maritima San Brasilio S. A., 386 F.2d 155 (2d Cir. 1967). After reviewing these precedents, the court found that "[t]here are legal remedies in both the Republic of Colombia and the Dominican Republic available to plaintiffs" and the defendants-appellees' motion to dismiss, "with prejudice," was, therefore, granted.

On appeal, the First Circuit affirmed, Per Curiam, on February 17, 1976, but ordered the words "with prejudice" stricken from the district court's judgment because "[u]nder the circumstances, it seems preferable not to attempt to telegraph advance instructions concerning the effect of the judgment, but rather to leave it to the court before whom any further proceeding may be pending to determine the extent to which this judgment is an estoppel or bar." (Unreported opinion.)

A second suit had already begun in the United States District Court for the Southern District of New York which the district court there found to be on the "identical facts and issues." On January 20, 1976, that court, in an unreported opinion, granted defendants-appellees' Rule 12(b) motion

---

* Pursuant to § 0.14 of the Rules of this Court, this appeal is being determined by Judges Anderson and Gurfein who are in agreement on this opinion. Judge Hays heard argument on

October 18, 1976, but has not had an opportunity to participate further in the case because of illness.

to dismiss and noted that the Puerto Rican district court had already dismissed a "similar action" for lack of jurisdiction—the appeal to the First Circuit from the Puerto Rican district court's dismissal was then pending, a factor which further persuaded the district court in New York to decline jurisdiction. It did not pass on appellees' *res judicata* contentions, however, but found that the motion to dismiss should be granted in any event because of a failure to effect proper service on the defendants.

On January 30, 1976, the plaintiffs-appellants moved to reargue on the grounds that service had been properly effected and that they should be granted an opportunity to show its validity. The motion to reargue was granted, but on February 18, 1976, the district court reaffirmed its original determination of dismissal. Following the First Circuit's affirmance of the dismissal of the Puerto Rican action, the plaintiffs-appellants filed another motion in the Southern District of New York on February 26th seeking to have the orders of dismissal set aside because appellants interpreted the First Circuit's order striking the words "with prejudice" to mean that the suit in the Southern District of New York could go forward. This motion was also denied.

Plaintiffs-appellants now appeal from both of the orders of the district court in the Southern District of New York dismissing their action.

At the outset, this court is faced with appellees' contention that the dismissal of the action brought in Puerto Rico for failure to establish jurisdiction under the Jones Act is *res judicata* in the Southern District of New York. The doctrine of *res judicata* is primarily grounded on a public policy determination which "dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 244 (1931). In *Baldwin*, the Court held that where a litigant had appeared specially in a

Missouri federal district court, argued and lost the issue of personal jurisdiction, and thereafter sought to press the same issue before another federal district court in Iowa in an action to enforce the Missouri judgment, *res judicata* would be applied to preclude relitigation of the personal jurisdiction issue, 283 U.S. at 526, 51 S.Ct. 517. Following *Baldwin, supra,* are *American Surety Co. v. Baldwin*, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932), where it was squarely held that "[t]he principles of *res judicata* apply to questions of jurisdiction as well as to other issues," 287 U.S. at 166, 53 S.Ct. at 101, and *Durfee v. Duke*, 375 U.S. 106, 112, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).

■ It is clear from the facts in the present case that plaintiffs-appellants pressed the same claim, involving the same parties and arising out of the same circumstances, before the district court in New York as they did before the district court in Puerto Rico. The issue of subject matter jurisdiction as to the Jones Act claims was "actually litigated and determined by a valid and final judgment," and that determination having been essential to that judgment, appellants are precluded from raising the issue once again in the Southern District of New York. *Restatement of Judgments 2d*, § 68 (Tent.Draft No. 1 1973).

■ Appellants go on to argue, however, that they have included "another cause of action" based on the Liberian Maritime Regulations, the Liberian Maritime Law, and the General Convention. Appellants assert that Liberian law empowers the courts "to consider the 'non-statutory General Maritime Law of the United States of America'" and that in this they may have a remedy. The *res judicata* doctrine, however, not only binds the parties and their privies as to grounds or issues actually litigated, but also "as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 681 (1877); *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 989 (1948); *Saylor v. Lindsley*, 391 F.2d 965, 968

(2d Cir. 1968); 1B *Moore's Federal Practice* ¶ 0.405[1] (1974 ed.).

Appellants further ignore the fact that in pressing this new theory of recovery, based on a primary right and an alleged wrong which are the same in both the Puerto Rican and Southern District of New York actions, *Carr v. United States*, 507 F.2d 191, 193 (5th Cir.), *cert. den.*, 422 U.S. 1043, 95 S.Ct. 2657, 45 L.Ed.2d 694 (1975), the district court in Puerto Rico explicitly held that:

> "This Court will therefore not take jurisdiction in this controversy between aliens to apply *foreign law* since clearly no substantial contacts qualify it as one over which we should exercise jurisdiction." (Emphasis added.)

"Foreign law" includes Liberian law, a factor which further undermines appellants' position on this issue.

■ With respect to appellants' primary contention that there are sufficient American "points of contact" here, *Lauritzen v. Larsen, supra*, 345 U.S. at 582, 73 S.Ct. 921, to warrant Jones Act jurisdiction, this court is in agreement with the holding of the district court in Puerto Rico, based on uncontroverted affidavits, that:

> "Neither the owners of the vessel, nor their agents, nor the ports of call, nor the flag flown, nor the crew, nor the plaintiffs, produces a contact sufficient to confer jurisdiction."

Before the district court in New York and now in this court, plaintiffs-appellants have alleged that the ownership of the M/V Caribe was in reality American, based on the alleged facts that the directors of Caribbean Carriers, Ltd. included one United States citizen, and a dual American and Dominican citizen. It further is asserted that the financing of the M/V Caribe was effected through sources in New York, as evidenced by a series of ship mortgages on file with the Commissioner of Maritime Affairs of Liberia.[1] The plain thrust of these allegations is an attempt to bring this case within the fact pattern and holding of *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252, *rehearing den.*, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970). In *Rhoditis*, the Supreme Court found the Jones Act available to a Greek seaman injured in the port of New Orleans when the owner of the vessel was a United States domiciliary (though a Greek citizen) who managed his business out of New York, had lived in this country since 1945 and maintained offices in New York and New Orleans. 398 U.S. at 307–08, 90 S.Ct. 1731.

Even if plaintiffs-appellants could prove at trial their assertions as to the American financing of the vessel, *Rhoditis, supra*, would be unavailable as a basis of Jones Act jurisdiction. The mere financing by American sources of a foreign based, owned and operated vessel does not act to extend to foreign seamen the entire range of protections afforded by American law. In this case, the district court in Puerto Rico has found that there are legal remedies available to plaintiffs in both the Republic of Colombia and the Dominican Republic, and it is in those countries that relevant witnesses and documentary evidence may be found. As a matter of policy and logic, therefore, the Jones Act should not be allowed "to intervene between foreigners and their own law because of acts on a foreign ship not in our waters." *Lauritzen v. Larsen, supra*, at 593, 73 S.Ct. at 933.

In light of this court's dispositive holding that *res judicata* bars the maintenance of this action in the Southern District of New York, no opinion is expressed as to plaintiffs-appellants' contentions that service on defendants-appellees was perfected under F.R.C.P. 4 and as to defendants-appellees' argument that the action is barred by ap-

---

1. If plaintiffs-appellants' position now is that these new factual allegations constitute newly discovered evidence or that the Puerto Rican district court dismissed the action through mistake, inadvertence, surprise or excusable neglect, the correct procedure was not to institute the new action in the Southern District of New York, but to move in the district court for the District of Puerto Rico for an order relieving plaintiffs-appellants from its final order pursuant to F.R.C.P. 60(b).

propriate statutes of limitations and/or laches.

The judgment of the district court dismissing the action is affirmed.