556 F.2d 975
 MIZOKAMI BROS. OF ARIZONA, INC., an Arizona Corporation, Appellant,
v.
BAYCHEM CORPORATION, a Delaware and New Jersey Corporation,
Bayer de Mexico, S.A., a corporation of the United States of
Mexico, Bayer AG, a corporation of the Federal Republic of
Germany, and Compania Vamex de Los Mochis, S.A., a
corporation of the United States of Mexico, Appellees.
 No. 75-2991.
 United States Court of Appeals,
Ninth Circuit.
 July 7, 1977.
 
 James Stroud, F. Trowbridge vom Baur, vom Baur, Coburn, Simmons & Turtle, Washington, D. C., argued for appellant.
 Jack Redhair, Chandler, Tullar, Udall & Richmond, Tucson, Ariz., argued for appellee, Baychem.
 Jack E. Brown, Brown, Vlassis & Bain, Phoenix, Ariz., argued for appellee Bayer Ag.
 John F. Molloy, Robertson, Molloy, Fickett & Jones, Tucson, Ariz., argued for appellee Bayer de Mexico.
 Appeal from the United States District Court for the District of Arizona.
 Before ELY and GOODWIN, Circuit Judges, and SOLOMON,* District Judge.
 PER CURIAM:
 
 
 1
 Mizokami Bros. of Arizona, an importer of Mexican-grown produce for sale in the United States and Canada, sustained losses when United States Customs officers turned back a shipment of bell peppers at the Mexican border because the vegetables were contaminated with excessive residues of the chemical Tamaron. Mizokami sued Bayer AG and its corporate children, Bayer de Mexico and Baychem, in the United States District Court for the District of Arizona. The court dismissed the action against the first two defendants for want of in personam jurisdiction under Arizona's long-arm statute and against the third for reasons of forum non conveniens. We affirm.
 
 
 2
 Baychem manufactured the Tamaron in Missouri for Bayer AG, the world patent owner, who in turn sold it to Bayer de Mexico. Eventually it was sold to Mexican farmers who used it on crops bought by Mizokami. Neither Bayer de Mexico nor Bayer AG did business in Arizona, and neither acted within the forum. The only effect alleged in Arizona was the loss to Mizokami when the chemically treated vegetables failed to gain entry into the United States.
 
 
 3
 Mizokami attempted to predicate long-arm liability against Bayer AG, the German parent of both Baychem and Bayer de Mexico, on the theory that Baychem, a subsidiary of Bayer AG, did business in Arizona. However, the business done in Arizona by Baychem was unrelated to the claim, and the mere existence of the parent-subsidiary relationship is not alone a sufficient basis for long-arm jurisdiction of the parent. Lycoming Division of Avco Corp. v. Superior Court, 22 Ariz.App. 150, 524 P.2d 1323, 1326 (1974). Bayer AG was not alleged to have any other connection with Arizona.
 
 
 4
 Plaintiff alleges that Bayer de Mexico knew or should have known that the chemical would be used on crops intended for United States markets, including Arizona. These allegations do not provide the minimum contacts required by the Due Process Clause for personal jurisdiction. See International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Amba Marketing Systems, Inc. v. Jobar International, Inc., 551 F.2d 784 (9th Cir. 1977); L. D. Reeder Contractors v. Higgins Industries, Inc., 265 F.2d 768, 773-774 (9th Cir. 1959). To the extent that the district court grounded its dismissal upon the failure of the complaint to allege facts establishing in personam jurisdiction, the judgment must be affirmed.
 
 
 5
 The dismissal of Mizokami's action against Baychem on the ground of forum non conveniens must also be affirmed. The determination of the appropriateness of the doctrine is entrusted to the sound discretion of the trial court. Paper Operations Consultants International, Ltd. v. SS Hong Kong Amber, 513 F.2d 667 (9th Cir. 1975).
 
 
 6
 Here, an Arizona corporation seeks to maintain an action in a court of the United States against a Delaware corporation which has its headquarters in Missouri. Such cases are filed in the federal courts daily. But we have been cited no case in which the facts are quite like those presently before us. Numerous cases suggest that a defendant must meet an almost impossible burden in order to deny a citizen access to the courts of this country. We note particularly Burt v. Isthmus Development Co., 218 F.2d 353 (5th Cir.), cert. denied, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955), wherein the court stated:
 
 
 7
 " * * * (C)ourts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country. * * * " 218 F.2d at 357.
 
 
 8
 See also Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326 (2d Cir. 1972); Olympic Corp. v. Societe Generale, 462 F.2d 376 (2d Cir. 1972); Hoffman v. Goberman, 420 F.2d 423 (3d Cir. 1970); Mobil Tankers Co. v. Mene Grande Oil Co., 363 F.2d 611 (3d Cir.), cert. denied, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966).
 
 
 9
 Despite the strong statements in favor of access, however, a United States citizen has no absolute right to sue in a United States court. Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633 (2d Cir.), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). Application of the forum non conveniens doctrine affords wide discretion to the district court. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).
 
 
 10
 The district court properly exercised its discretion in the present case. The plaintiff corporation claimed a relationship, not clearly defined, with certain Mexican growers. The complaint was of misrepresentations made to the growers in Mexico with respect to a chemical manufactured in Missouri and sold in Mexico by the defendants. All transactions between the parties, as well as the claim itself, arose in Mexico.
 
 
 11
 The plaintiff falls back on its United States citizenship as the sole and only possible basis for suing these defendants in a court of the United States. This is not enough. In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.
 
 
 12
 There was no abuse of discretion.
 
 
 13
 Affirmed.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation