565 F.2d 851
 Monika PASTEWKA, Sven Joern Hagen Pastewka, heirs and
representatives of Hagen Pastewka, Deceased, Fritz
Weinschenk, their duly authorized
personal representative
v.
TEXACO, INC., and Texaco Panama, Inc., corporations.
*
 No. 76-2590.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 7, 1977.
Decided Oct. 27, 1977.
 
 John M. Bader, Bader, Dorsey & Kreshtool, Wilmington, Del., Harvey Goldstein, Fuchsberg & Fuchsberg, MacDonald Deming, Haight, Gardner, Poor & Havens, New York City, for appellants; Michael J. Egelhof, Staten Island, N.Y., on the brief.
 Edmund N. Carpenter, II, Donald A. Bussard, Richards, Layton & Finger, Wilmington, Del., for appellees; Poles, Tublin, Patestides & Stratakis, New York City, of counsel.
 Before SEITZ, Chief Judge, and GIBBONS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 This is an appeal from a district court order dismissing actions against Texaco, Inc., and Texaco Panama, Inc., on the ground that the plaintiffs are bound by a forum non conveniens decision in another forum.[1] Because we conclude that the district court properly applied the principle of direct estoppel by judgment, we affirm its decision.
 
 
 2
 On January 11, 1971, the Paracas, a vessel of Peruvian registry, collided in the English Channel, twelve miles off the English coast, with the Texaco Caribbean, a tanker of Panamanian registry owned by a Panamanian corporation, Texaco Panama, Inc. (Texpan), and managed by a British corporation, Texaco Overseas Tankships, Ltd. (TOT).[2] Both vessels sank. TOT promptly notified Trinity House, an English corporation with the statutory duty of locating and marking wrecks off the English coast. A Trinity House vessel, the Siren, mistakenly assuming that an oil slick marked the location of the submerged hulk of the Texaco Caribbean, took up station on January 12, 1971. The Siren was in the wrong place, and the Brandenburg, a vessel of German registry, struck the submerged Texaco Carribean. The Brandenburg sank with all her cargo; many members of her crew perished.
 
 
 3
 Several suits concerning the collisions were initiated in England on May 16, 1972, and are still pending.[3] Between November 27, 1972, and January 8, 1973, twelve identical individual lawsuits were filed against Texaco, Inc., and Texpan in the Southern District of New York by an attorney representing the estates of twelve deceased crewmen of the Brandenburg. Suits against Texaco, Inc., and Texpan were also filed in the Southern District of New York by the owners of the Brandenburg hull and cargo. Each suit alleged negligent failure to mark the wreckage of the Texaco Caribbean.
 
 
 4
 On January 9, 1973, actions were filed in the District of Delaware by the estates of the twelve seamen against Texaco, Inc., and Texpan. In all material respects the complaints were identical to those filed in New York. The parties stipulated that, since the Delaware and New York suits were between the same parties and involved the same subject matter, the actions in the District of Delaware would be stayed pending the outcome of the actions in the Southern District of New York.
 
 
 5
 Meanwhile in New York all the actions pending in the Southern District had been consolidated for all purposes. Eventually the district court there dismissed the several complaints on the ground that England, not New York, was the logical forum. A divided panel of the Second Circuit affirmed, and the Supreme Court denied certiorari in January, 1976.
 
 
 6
 Thereafter, the cargo owners of the Brandenburg (though not the vessel owners) filed a new complaint in Delaware, identical in all material respects to that previously dismissed in New York. The new complaint was consolidated with the complaints of the twelve estates. Texaco, Inc., and Texpan then moved to dismiss the Delaware complaints on the grounds that the decision in New York had established the facts and the law applicable to a forum non conveniens ruling, that the facts and law were equally applicable in Delaware, and that the New York judgment, therefore, necessitated a dismissal in Delaware.[4] The district court granted the motion.
 
 
 7
 The appellants concede, as they must, that had the New York judgment, now final, been on the merits, res judicata would bar the Delaware action. But they urge that the policy underlying res judicata does not apply to matters in abatement which may involve the exercise of discretion. A non-merits judgment following a plea in abatement, however, does create a direct estoppel as to matters which were actually adjudicated. This is made clear in the Restatement of Judgments § 49, Comment b (1942):
 
 
 8
 Although, where the judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action. . . .
 
 
 9
 This is an instance of direct estoppel rather than collateral estoppel (see § 68), since the second action is based upon the original cause of action (see § 45(c) and Comment d thereon). The matter actually litigated and determined is res judicata between the parties in a subsequent action involving the same matter, whether the subsequent action is based upon the same or a different cause of action.
 
 
 10
 See also 1B Moore's Federal Practice P 0.405(5), at 659-60 (2d ed. 1965).
 
 
 11
 In the New York case the Second Circuit considered and applied each of the factors listed in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), bearing upon the decision to dismiss on the ground of forum non conveniens including the availability of witnesses, the amenability of all interested parties to service of process, and the governing law of liability and damages. The appellants point to no objective fact establishing that, unlike New York, Delaware would be a more convenient forum than England or that Delaware would be even as convenient as New York. Indeed, it appears that the only reason Delaware was resorted to was that under 28 U.S.C. § 1332(c) Texaco, Inc., a Delaware corporation, may be sued there. The tenuous connection between this dispute and the Southern District of New York, which the Second Circuit found insufficient, was the presence in the district of some Texaco, Inc., employees who might be witnesses. Delaware lacks even this connection with the dispute. Every other factor upon which the Second Circuit relied in concluding that the appellants should be relegated to the available English forum is equally applicable in Delaware.
 
 
 12
 The appellants argue that the proper conclusion to be drawn from these factors can now be relitigated. They place principal reliance on Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), in which the Supreme Court affirmed the Seventh Circuit's mandamus to an Illinois district court which had considered itself bound by an order of the Fifth Circuit under 28 U.S.C. § 1404(a) transferring a case to that district. It is true that in this much criticized case the Court did permit relitigation of a change of venue order. But no more was involved in Hoffman v. Blaski than the discretionary law of the case doctrine, since a change of venue under § 1404(a) is interlocutory, not final. See 1B Moore's Federal Practice P 0.404(1), at 401-09; P 0.404(8), at 531-37 (2d ed. 1965).
 
 
 13
 Unlike a venue transfer under § 1404(a), the judgment dismissing the New York case was a final judgment, and that final judgment has been affirmed. The preclusionary effect of a judgment does not stem from a mere rule of practice such as the law of the case doctrine. While an action is still pending in a judicial system which affords appellate review, it is tolerable to allow pendente lite correction of errors rather than risk later reversals and retrials. Once a judicial system has afforded the opportunity for full and final litigation of issues between parties, however, permitting relitigation of the same issues in another court is intolerable.[5] The appellants in this case do not urge any argument that would permit relief from the Second Circuit's judgment. They cannot now relitigate the issues which were then finally resolved.
 
 
 14
 Parsons v. Chesapeake & Ohio Railway Co., 375 U.S. 71, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963) (per curiam), is not inconsistent with the direct estoppel by judgment rule. Instead, it illustrates the operation of that rule. In Parsons a federal district court, considering a motion to transfer pursuant to 28 U.S.C. § 1404(a), ruled that it was bound by a state court's forum non conveniens decision. (See 28 U.S.C. § 1738.) The Supreme Court reversed, observing:
 
 
 15
 The discretionary determinations of both the state and federal courts in this case required, to be sure, evaluations of similar, but by no means identical, objective criteria. However, since the material facts underlying the application of these criteria in each forum were different in several respects, principles of res judicata are not applicable to the situation here presented.
 
 
 16
 375 U.S. at 72-73, 84 S.Ct. at 186.
 
 
 17
 In this case the appellants point to identical objective criteria and rely on identical material facts underlying the application of those criteria. Their contention amounts to no more than a wish that, in applying the objective criteria to the undisputed facts, a different judge would make the discretionary forum non conveniens determination. If appellants expected the district judge in Delaware to exercise a more discreet discretion than his judicial brother in the Southern District of New York, then they should have begun their litigation in Delaware. Having now finally lost in New York, they cannot relitigate the same factual and legal issues in Delaware.
 
 
 18
 The judgment appealed from will be affirmed.
 
 
 
 *
 Consolidated with the following:
 Passow, Rahmann, Hergovich, Timm, Puphal, Trinanes, Alonso-Cardillo, and Castro v. Texaco, Inc.
 
 
 [1]
 The district court's decision is reported in Pastewka v. Texaco, Inc., 420 F.Supp. 641 (D.Del.1976). The decision held to be binding on the plaintiffs on the forum non conveniens issue is Fitzgerald v. Texaco, Inc., 521 F.2d 448 (2d Cir. 1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976)
 
 
 [2]
 For a description of the relationship between Texpan, TOT, and Texaco, Inc., see DeMateos v. Texaco, Inc., 562 F.2d 895 (3d Cir. 1977)
 
 
 [3]
 The litigation in England is listed in Fitzgerald v. Texaco, Inc., 521 F.2d at 449 n.1
 
 
 [4]
 The identity of both factual and legal issues is shown in the district court's opinion and need not be repeated here
 
 
 [5]
 The only reasons for relieving a party from a final judgment are set forth in Fed.R.Civ.P. 60(b)