**MIZOKAMI BROS. OF ARIZONA, INC., Plaintiff,**

v.

**MOBAY CHEMICAL CORPORATION, Defendant.**

No. 78–0154–CV–W–2.

United States District Court, W. D. Missouri, W. D.

Jan. 22, 1980.

F. Philip Kirwan of Margolin & Kirwan, Kansas City, Mo., F. Trowbridge Vom Baur of Vom Baur, Coburn, Simmons & Turtle, Washington, D. C., for plaintiff.

Thomas J. Wheatley of Lathrop, Koontz, Righter, Claggett, Parker & Norquist, Kansas City, Mo., for defendant.

## ORDER ON PENDING MOTIONS

COLLINSON, District Judge.

This action arose when a shipment of bell peppers that was being transported from Los Mochis, Mexico to Nogales, Arizona was impounded at the United States border. Plaintiff alleges that the peppers were impounded and denied entry to the United States because they had been sprayed with, and contained residues of, the insecticide Tamaron. The plaintiff in this action is Mizokami Brothers of Arizona, Inc. (hereinafter Mizokami), an Arizona corporation whose principal place of business is Nogales, Arizona. Plaintiff alleges that defendant, Mobay Chemical Corporation (hereinafter Mobay), a New Jersey corporation who does business in Jackson County, Missouri, was part of a civil conspiracy that caused the shipment of bell peppers to be kept from entering the United States. Plaintiff specifically alleges that Mobay manufactured the principal ingredient in the insecticide Tamaron in Jackson County, Missouri, and then sold that ingredient to one of its co-conspirators, Bayer A. G., which is Mobay's parent company and which is both incorporated in and does business in the Republic of Germany. Plaintiff alleges that, although it sold the ingredient to Bayer A. G., Mobay shipped the ingredient to another of its co-conspirators, a company called Bayer de Mexico, a Mexican company whose principal place of business is Los Mochis, Mexico. Like Mobay, Bayer de Mexico is a subsidiary corporation of Bayer A. G. Plaintiff alleges that Bayer de Mexico received the ingredient manufactured by Mobay, then used that ingredient, with others, to manufacture the insecticide Tamaron. Plaintiff alleges that Bayer de Mexico packaged the Tamaron, placed labels on the Tamaron packages, and sold the Tamaron to vegetable growers in Los Mochis, Mexico. Finally, plaintiff alleges that the labels placed on the Tamaron packages, the literature distributed by Bayer de Mexico, and the oral representations made by sellers of Tamaron to the buyers of that insecticide misrepresented that the insecticide could be used on vegetable crops destined for sale in the United States.

Plaintiff's complaint includes three counts: Count I is based on defendant's alleged conspiracy to avoid compliance with the United States' laws concerning foods, drugs, and insecticides; Count II is based on defendant's alleged conspiracy to violate the laws of Mexico; and Count III is a claim for punitive damages. Jurisdiction in this Court exists under 28 U.S.C. § 1332. Venue in this district is proper under 28 U.S.C. § 1391.

This action was originally filed by plaintiff in the United States District Court for the District of Arizona on October 26, 1973. The defendants named in that action were Mobay (Baychem Corporation has now changed its corporate name to Mobay Chemical Corporation), Bayer A. G., and Bayer de Mexico, who are also the three alleged co-conspirators in this action. The complaint in the Arizona action included eight different causes of action, all of which were based on Mobay's, Bayer A. G.'s, and

Bayer de Mexico's alleged participation in the manufacture and sale of Tamaron in Los Mochis, Mexico. After extensive discovery, briefing, and oral argument, which resulted in over 1,400 pages of record, Judge Walsh, United States District Judge for the District of Arizona, dismissed that action against all three of the co-conspirators in this case; the Arizona action was dismissed against Bayer A. G. and Bayer de Mexico for lack of *in personam* jurisdiction and the action against Mobay, the defendant in this action, was dismissed on the basis of *forum non conveniens*. Plaintiff appealed Judge Walsh's decision to the United States Court of Appeals, Ninth Circuit. In an opinion filed on July 7, 1977, that Court affirmed Judge Walsh's handling of plaintiff's claim against all three defendants in that action. *Mizokami Bros. of Arizona, Inc. v. Baychem Corporation, et al.*, 556 F.2d 975 (9th Cir. 1977), *cert. denied* 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978).

This action was filed on March 13, 1978, naming Mobay as the sole defendant, but also naming Bayer A. G. and Bayer de Mexico as co-conspirators. The alleged factual basis for this action is identical to the factual basis for the Arizona action. On April 26, 1978, defendant Mobay filed a motion for summary judgment based upon the claim preclusion doctrines, a motion to dismiss on the ground of *forum non conveniens*, and a motion for summary judgment based upon the running of the applicable statute of limitations. The parties have filed extensive briefs and reply briefs in support of their respective positions on defendant's April 26, 1978 motions. This Court has carefully considered the parties' suggestions, the decisions of the district court and the court of appeals in the Arizona action, and the 1400-page record from the Arizona proceeding. After consideration of that information, this Court concludes that defendant's motion for summary judgment should be granted.

▮▮▮ The major argument advanced by defendant in support of its motion for summary judgment is that plaintiff should not be permitted to relitigate the *forum non conveniens* decision reached by Judge Walsh in the Arizona action.[1] In support of that argument, defendant cites *Pastewka v. Texaco, Inc.*, 565 F.2d 851 (3d Cir. 1977) (hereinafter *Pastewka*), and *Sanchez v. Caribbean Carriers, Ltd.*, 552 F.2d 70 (2nd Cir. 1977), *cert. denied* 434 U.S. 853, 98 S.Ct. 168, 54 L.Ed.2d 123 (1977). The Third Circuit's opinion in *Pastewka* was rendered on facts that are indistinguishable from the facts before this Court. The *Pastewka* action was originally filed in the United States District Court for the Southern District of New York. That court dismissed the action on the basis of *forum non conveniens*, holding that the action should be tried in England. That decision was affirmed on appeal by the United States Court of Appeals for the Second Circuit. *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448 (2d Cir. 1975). Prior to the Second Circuit's ruling, however, the *Pastewka* action was filed in the United States District Court for the District of Delaware. The district judge dismissed the Delaware action on the basis that the plaintiffs were bound by the *forum non conveniens* decision in the Southern District of New York. The Court of Appeals for the Third Circuit affirmed that decision:

> The appellants concede, as they must, that had the New York judgment, now final, been on the merits, *res judicata* would bar the Delaware action. But they urge that the policy underlying *res judi-*

---

1. Based upon the suggestions filed on this point, both parties apparently think that federal law controls this action. The sole basis for this Court's jurisdiction over this matter is, however, the fact that the parties are residents of different states. For the purposes of this diversity action this Court is, therefore, a court of the State of Missouri and is required to apply the law of the State of Missouri to this contro-versy. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *cf. Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The law of the State of Missouri concerning the application of the doctrine of *forum non conveniens* is, however, the same as the federal rule. *Loftus v. Lee*, 308 S.W.2d 654 (Mo.Sup.1958).

*cata* does not apply to matters in abatement which may involve the exercise of discretion. A non-merits judgment following a plea in abatement, however, does create a direct estoppel as to matters which were actually adjudicated. This is made clear in the Restatement of Judgments § 49, Comment b (1942):

> Although, where the judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action. . . .
>
> This is an instance of direct estoppel rather than collateral estoppel (see § 68), since the second action is based upon the original cause of action (see § 45(c) and Comment d thereon). The matter actually litigated and determined is res judicata between the parties in a subsequent action involving the same matter, whether the subsequent action is based upon the same or a different cause of action.

*See also* 1B Moore's Federal Practice ¶ 0.405[5], at 659–60 (2d ed. 1965).

In the New York case the Second Circuit considered and applied each of the factors listed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), bearing upon the decision to dismiss on the ground of *forum non conveniens*—including the availability of witnesses, the amenability of all interested parties to service of process, and the governing law of liability and damages. The appellants point to no objective fact establishing that, unlike New York, Delaware would be a more convenient forum than England or that Delaware would be even as convenient as New York. Indeed, it appears that the only reason Delaware was resorted to was that under 28 U.S.C. § 1332(c) Texaco, Inc., a Delaware corporation, may be sued there. The tenuous connection between this dispute and the Southern District of New York, which the Second Circuit found insufficient, was the presence in the district of some Texaco, Inc., employees who might be witnesses. Delaware lacks even this connection with the dispute. Every other factor upon which the Second Circuit relied in concluding that the appellants should be relegated to the available English forum is equally applicable in Delaware.

The appellants argue that the proper conclusion to be drawn from these factors can now be relitigated. They place principal reliance on *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), in which the Supreme Court affirmed the Seventh Circuit's mandamus to an Illinois district court which had considered itself bound by an order of the Fifth Circuit under 28 U.S.C. § 1404(a) transferring a case to that district. It is true that in this much criticized case the Court did permit relitigation of a change of venue order. But no more was involved in *Hoffman v. Blaski* than the discretionary law of the case doctrine, since a change of venue under § 1404(a) is interlocutory, not final. *See* 1B Moore's Federal Practice ¶ 0.404[1], at 401–09; ¶ 0.404[8], at 531–37 (2d ed. 1965).

Unlike a venue transfer under § 1404(a), the judgment dismissing the New York case was a final judgment, and that final judgment has been affirmed. The preclusionary effect of a judgment does not stem from a mere rule of practice such as the law of the case doctrine. While an action is still pending in a judicial system which affords appellate review, it is tolerable to allow *pendente lite* correction of errors rather than risk later reversals and retrials. Once a judicial system has afforded the opportunity for full and final litigation of issues between parties, however, permitting relitigation of the same issues in another court is intolerable. The appellants in this case do not urge any argument that would permit relief from the Second Circuit's judgment. They cannot now relitigate the issues which were then finally resolved.

*Pastewka, supra,* 565 F.2d at 853–54. In *Sanchez v. Caribbean Carriers, Ltd.,* 552 F.2d 70 (2d Cir. 1977), *cert. denied* 434 U.S.

853, 98 S.Ct. 168, 54 L.Ed.2d 123 (1977) (hereinafter *Sanchez*), the Court of Appeals for the Second Circuit applied the same principle recognized in *Pastewka* to preclude relitigation of a non-merits decision made by a district court in Puerto Rico.

▮ After consideration of the Third Circuit's opinion in *Pastewka* and the Second Circuit's opinion in *Sanchez*, this Court is convinced that plaintiff should not be permitted to relitigate the *forum non conveniens* determination made by Judge Walsh in the Arizona action. At some point there must be an end to litigation. As the Third Circuit recognized in *Pastewka*, "Once a judicial system has afforded the opportunity for full and final litigation of issues between parties, however, permitting relitigation of the same issues in another court is intolerable." *Pastewka, supra* at 854. Three factors support the application of that principle in this action. First, it is clear that Judge Walsh held that this action should be tried in Mexico. The transcript of the May 24, 1975 proceeding before Judge Walsh establishes that Judge Walsh was aware of his option under 28 U.S.C. § 1404(a) to transfer this action to another district in the United States. Judge Walsh chose, however, to dismiss the action. It is also clear from the arguments presented at the May 24, 1975 proceeding, and from Judge Walsh's oral ruling, that Judge Walsh held that this action should be tried in Mexico. The Court of Appeals' opinion affirming Judge Walsh's ruling confirms this conclusion. Second, there is no doubt that plaintiff was provided a full and fair opportunity to litigate the *forum non conveniens* issue in the Arizona action. This conclusion is not only supported, but virtually required, after examination of the 1400-page record accumulated in the Arizona action. Finally, plaintiff does not allege any facts that could convince this Court that, unlike Arizona, Missouri would be a more convenient forum than Mexico for trial of this action. Plaintiff concedes the essential facts that this action is based upon misrepresentations made in Mexico concerning an insecticide manufactured in Mexico by a Mexican corporation and sold for use on Mexican-grown crops. Plaintiff argues, however, that a United States plaintiff should not be denied a forum in the United States. This Court has carefully considered the cases cited by plaintiff in support of this argument. This Court agrees, however, with the Ninth Circuit's treatment of this argument:

The plaintiff falls back on its United States citizenship as the sole and only possible basis for suing these defendants in a court of the United States. This is not enough. In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.

*Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975, 976 (9th Cir. 1977).

▮ In addition, this Court is convinced that, even if plaintiff were not precluded from relitigating the *forum non conveniens* question, defendant's motion to dismiss on the basis of *forum non conveniens* should be granted. In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, the Supreme Court set forth the factors to be considered in determining whether the doctrine of *forum non conveniens* should be applied to a particular case:

If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may

also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). After consideration of those factors, this Court finds, and accordingly holds, that the combination of the private interest of the litigants and the public's interest strongly support defendant's contention that this action should be tried in Mexico. Many of the sources of proof, especially the witnesses to the representations made at the time of sale of the Tamaron, are in Mexico. This Court has no means available to require the attendance at a trial in Missouri of unwilling Mexican witnesses. The cost of obtaining the attendance of the willing Mexican witnesses and translating those witnesses' testimony from Spanish to English could be enormous in the trial of this complex case. In addition, and perhaps most importantly, this Court is completely unfamiliar with Mexican law, which plaintiff concedes controls at least part of its claim against defendant. Mexican law is, of course, written in Spanish. English translations are not readily available to this Court.

Plaintiff argues, however, that a prerequisite to a forum non conveniens dismissal is the existence of an alternative forum. Plaintiff argues, further, that Mexico is not an available forum, apparently for the sole reason that the Mexican statute of limitations would bar plaintiff's claim. This Court agrees that the existence of an alternative forum is a prerequisite to a forum non conveniens dismissal. The Supreme Court specifically stated that requirement in Gulf Oil Corp. v. Gilbert, "In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506–507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). This Court does not agree, however, that the fact that the Mexican statute of limitations may bar this action in Mexico means that Mexico is not an available forum. The Gulf Oil requirement of an alternative forum cannot be read to require an alternative forum where plaintiff will succeed on the merits. Plaintiff has made no suggestion that Mexican courts would not take jurisdiction over the parties to this dispute or over this controversy. In addition, plaintiff's argument that this action may be barred in Mexico carries little weight in this case. First, under the Missouri borrowing statute this Court will be required to apply Mexican law to plaintiff's claim. Thus, if the action is barred by the statute of limitations in Mexico, the action would also be barred in this Court. Second, although in opposition to defendant's forum non conveniens argument, plaintiff states that this action is barred in Mexico, in its suggestions in opposition to defendant's motion for summary judgment on the basis of the running of the

applicable statute of limitations, plaintiff argues that this action is *not* barred by the applicable statute of limitations. Plaintiff cannot have it both ways. Either the statute of limitations does not bar this action in Mexico, and thus the action could succeed in Mexico, or this action is barred by the applicable statute of limitations and should be dismissed. The pleadings and record in this case do not establish that this action is barred by the applicable statute of limitations. In fact, plaintiff does not even allege in its complaint the date upon which the bell peppers were seized by the United States. In addition, based upon the parties' briefs, this Court cannot confidently hold which statute of limitations is applicable to plaintiff's claim.

For the reasons set forth above, it is, therefore,

ORDERED that defendant's motion, filed April 26, 1978, for summary judgment based upon the claim preclusion doctrine be, and hereby is, granted; and it is

ORDERED that, in the alternative, defendant's motion, filed April 26, 1978, to dismiss on the ground of *forum non conveniens* be, and hereby is, granted; and it is

ORDERED that defendant's motion, filed April 26, 1978, for summary judgment based upon the running of the statute of limitations be, and hereby is, denied.