**EXXON CORPORATION, et al., Plaintiffs-Appellees,**

v.

**CHICK KAM CHOO, et al., Defendants-Appellants.**

No. 86–2428.

United States Court of Appeals, Fifth Circuit.

May 21, 1987.

Rehearing and Rehearing En Banc Denied June 24, 1987.

Joseph C. Blanks, Beaumont, Tex., for defendants-appellants.

James Patrick Cooney, Houston, Tex., for plaintiffs-appellees.

Before CLARK, Chief Judge, GEE, and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

This appeal presents a novel issue: whether the dismissal on *forum non conveniens* grounds of a maritime action by a federal court precludes litigation of the same claims in a state court located in the same city. We conclude that the *forum non conveniens* determination in federal court is binding in a subsequent action between the same parties in the nearby state court.*

## A. Facts and Prior Proceedings

Appellant Choo's husband Leong Chang was a shipwright. In 1977, he was killed in an accident while helping to repair a vessel docked in Singapore. Madam Choo sued the appellees, who are the owner and the operator of the vessel, in the Houston federal court for damages under the Jones Act, DOSHA, general maritime law, and the Texas wrongful death statute. The district court granted summary judgment on the merits of the Jones Act, DOSHA, and general maritime law claims, but granted the appellees only a conditional dismissal of the remaining claims because Houston was an inconvenient forum.[1] Madam Choo failed to appeal, and the denial of her subsequent Rule 60(b) motion was affirmed in *Chick Kam Choo v. Exxon Corp.*, 699 F.2d 693 (5th Cir.) ("*Choo I*"), *cert. denied*, 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 103 (1983).

Madam Choo brought the same claims in a Texas state court in Houston.[2] Exxon removed the case on diversity grounds to the federal district court, which dismissed the case as *res judicata* and sanctioned Choo's lawyers. On appeal, our Court reversed the removal, holding that there was not complete diversity between the parties.

*Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148 (5th Cir.1985) ("*Choo II*"). The sanctions were dissolved and the case returned to state court. Exxon then brought this independent action seeking to enjoin the state court proceeding as an interference with the prior judgment of the federal court. The district court granted the injunction and again sanctioned Choo's attorneys. Choo appeals.

## B. Jurisdiction and the Anti-Injunction Act

Madam Choo concedes on brief that jurisdiction is proper in this case if the district court was properly enjoining the state litigation as *res judicata:*

> As a general rule, no independent basis of jurisdiction is needed for the court to entertain an application for injunction under the third exception [to the Anti-Injunction Statute, 28 U.S.C. § 2283, which allows injunctions of state court proceedings "to protect or effectuate" the federal courts judgments]. The matter is considered to be ancillary, supported by the jurisdiction the court had when it entered the original judgment. *See Southwest Airlines* [*v. Texas Int'l Airlines*, 546 F.2d 84 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977)] at 89–90, wherein the ancillary jurisdiction to support injunctive relief was supported by earlier action in which the district court *properly* asserted federal question jurisdiction.

Appellant's brief at 10 (emphasis in original). Therefore the only real issue in this case is whether the district court's dismissal of the first action bound all subsequent proceedings in Houston courts.

---

* Chief Judge Clark believes that this case could be disposed of without reaching the question of the *res judicata* effect of the federal court's *forum non conveniens* dismissal. *See infra,* 817 F.2d at 325 (Clark, C.J., concurring). He joins this opinion on the condition that the question must be decided; and Judges Gee and Reavley agree that the *res judicata* issue is controlling and must be decided.

1. Underlying that decision were subsidiary determinations that Singapore's would be the con-

trolling law and that Singapore was the site of the accident, was the residence of most of the plaintiffs and witnesses, and could provide an adequate forum.

2. At oral argument, appellants acknowledged that they had originally refiled an identical action including federal maritime claims in state court; they claim now to have voluntarily dismissed all but the state-law claims.

As we understand the presentation of Madam Choo's lawyers, she advances three intertwined contentions to show that the Texas court is not bound. The first is that the federal district court's original conditional dismissal of her Texas wrongful death claim was a nullity because the court had dismissed all federal claims and therefore lacked pendent jurisdiction over the Texas claim. The second is that a Texas state court may properly redetermine the identical *forum non conveniens* issue: whether Houston is a convenient forum for trial of this case from Singapore. The third is that Texas law does not recognize the doctrine of *forum non conveniens* in actions for personal injury or death and hence that the federal court's application of that doctrine is irrelevant to the state court proceeding. These arguments are not explicitly made in the alternative, but we will consider them in that fashion because they are logically disjoined.

### C. The Current Status of the Texas Claims

Madam Choo contends that the district court was without power to dismiss her state-law claims. She does not dispute that the district court *intended* to dismiss the Texas claims on *forum non conveniens* grounds. In fact, the magistrate's recommendation in the initial round of litigation in the federal court explicitly included the Texas state claims in the recommendation for conditional *forum non conveniens* dismissal.[3] But because the district court dismissed all her claims under substantive federal law, she argues that the court thereby deprived itself of power to adjudi-

cate her pendent claims, and its attempt to do so was a nullity.

The judgment of the district court sounds inconsistent in this respect. It first dismissed all federal claims, including those under "the general maritime laws of the United States," on the merits. Then, it granted a motion for conditional *forum non conveniens* dismissal without specifying what claims were being dismissed on that ground.[4] As we have noted, the Texas claims were no doubt meant to be included in this conditional dismissal, but the court did not state which, if any, federal claims were conditionally dismissed.

■ A sufficient but incomplete response to this argument is that even if no federal admiralty claim remained in the case, the district court still retained pendent jurisdiction over the state claims. Dismissal of federal claims on the merits does not deprive a federal court of jurisdiction over state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Furthermore, even supposing the district court to have abused its discretion in dismissing the pendent state claim as *forum non conveniens*, that ruling was not appealed and thus, right or wrong in the abstract, is binding on the parties as a practical matter. Courts are no longer sympathetic to the argument that judicial blunders void the jurisdiction or nullify the power of a court. *See Archie v. Christian*, 808 F.2d 1132 (5th Cir.1987) (en banc) (lack of consent to a jury trial before a federal magistrate as required by statute does not undermine the district court's jurisdiction

---

**3.** The magistrate recommended *forum non conveniens* dismissal of the claims remaining in the action in a section entitled "General Maritime Law, Texas Statutes, Other Claims and *Forum Non Conveniens.*"

**4.** The district court's Order of Dismissal reads:
It is therefore ORDERED, ADJUDGED and DECREED that Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' claims under the Jones Act, the Death on the High Seas Act, the Longshoremen's and Harbor Workers Compensation Act, *and the general maritime laws of the United States.*

It is further ORDERED, ADJUDGED and DECREED that Defendants' Motion to Dismiss under the doctrine of *forum non conveniens* is GRANTED, without prejudice, provided that Defendants Exxon Corporation and Esso Tankers, Inc., consent to the jurisdiction of the appropriate Singapore court, submit to service of process in such court, waive any defense relating to any statute of limitation, and consent to satisfy any judgment rendered by said court.
(Emphasis added.) The relevant language in the magistrate's Memorandum and Recommendation is the same.

or nullify the judgment so as to warrant sua sponte reversal on appeal).

But we must reject for more fundamental reasons the contention that the district court was without jurisdiction to dispose of the state claims. The federal court sitting in admiralty is a court of plenary jurisdiction. Such a court is not deprived of jurisdiction by reason of the fact that neither federal statutory law nor general maritime law provides the substantive law to resolve the matter before it. The *Lauritzen-Romero-Rhoditis*[5] doctrine applied by the district court is a maritime choice of law doctrine. When an admiralty court determines that foreign law applies, that is simply one factor to be considered in *forum non conveniens* analysis. It is axiomatic that only a court with jurisdiction over the case can dismiss it as filed in a *forum non conveniens*.

In this case, the district court granted summary judgment on the claim that the substantive general maritime law of the United States governed the action; but it implicitly acknowledged that the plaintiffs—survivors of a ship repairman killed on an operational vessel in navigable waters—have admiralty tort claims. *See Kelly v. Smith*, 485 F.2d 520, 523–26 (5th Cir.1973) (setting out test for admiralty jurisdiction), *cert. denied sub nom. Chicot Land Co. v. Kelly*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974); *cf. Cormier v. Oceanic Contractors, Inc.*, 696 F.2d 1112, 1113 (5th Cir.) (welder injured while working aboard a barge moored for loading in Dubai, United Arab Emirates, is a *Sieracki* seaman[6] entitled to bring an unseaworthiness claim under the general maritime law), *cert. denied*, 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983). The court simply declined to exercise its undoubted admiralty jurisdiction over claims by Singapore plaintiffs on an alleged tort in Singapore to which the substantive law of Singapore should be applied. Therefore, the condi-

tional dismissal included maritime tort claims and the federal court necessarily had jurisdiction to dispose of pendent state claims.

We have established that Madam Choo's claims under Texas law were conditionally dismissed as *forum non conveniens* in the first round of litigation by a court with power to do so. We now squarely face Choo's alternative argument: A Texas state court may nevertheless redetermine whether *forum non conveniens* applies to a case previously dismissed on that ground in a federal court a few blocks away. This poses issues both important and novel, to which we now turn.

*D. The Effect of the* Forum Non Conveniens *Dismissal*

Federal courts have permitted relitigation of the *forum non conveniens* issue in a different federal forum when the plaintiff has demonstrated different contacts between the new forum and the underlying dispute. In *Mizokami Brothers of Arizona v. Mobay Chemical Corp.*, 660 F.2d 712, 716 (6th Cir.1981), an Arizona district court had dismissed a dispute between international parties on *forum non conveniens* grounds. The Sixth Circuit held that the plaintiff could relitigate the *forum non conveniens* issue in a Missouri district court.

> Appellant here has contended that the contacts of the parties with Missouri, the availability of witnesses in Missouri and other relevant factors make the inquiry distinct. We believe the record demonstrates sufficient differences in the underlying facts that consideration of the convenience of a Missouri forum is not foreclosed.

660 F.2d at 716. The *Mizokami* court distinguished *Pastewka v. Texaco, Inc.*, 565 F.2d 851 (3d Cir.1977). In *Pastewka*, the Third Circuit held that a *forum non conve-*

**5.** *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Hellenic Lines Limited v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

**6.** *Sea Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (harbor workers undertaking traditional tasks and risks of seamen can sue shipowner for unseaworthiness).

*niens* determination in a New York federal district court was *res judicata* as to a Delaware federal district court when the underlying dispute involved a maritime collision twelve miles off the coast of England:

> The appellants point to no objective fact establishing that, unlike New York, Delaware would be a more convenient forum than England or that Delaware would be even as convenient as New York. Indeed, it appears that the only reason Delaware was resorted to was that under 28 U.S.C. 1332(c) Texaco, Inc., a Delaware corporation, may be sued there.

565 F.2d at 853.

Madam Choo's presentation to us does not point to any "underlying facts," *Mizokami*, 660 F.2d at 716, or "objective fact," *Pastewka*, 565 F.2d at 853, that make a Texas court in Houston a more convenient forum for this litigation than a United States District Court in Houston. We therefore contemplate a more extreme situation than that dealt with in *Pastewka:* there the localities dealt with were England (site of accident), New York (forum first found inconvenient), and Delaware (second forum, precluded by first determination). Here the corresponding ones are: Singapore, Houston (federal court), and Houston (state court). There can be no doubt that there is but one issue, an issue that has already once been decided by the federal district court. While that decision was probably correct, what signifies is that Choo did not appeal from it so its propriety is not even before us. The only question before us is whether the *forum non conveniens* issue itself is the same in Houston federal and state trial courts. Madam Choo has alleged no facts relevant to *forum non conveniens* that could lead us to conclude that a state court is a more convenient forum.

There is, to be sure, little authority on the point. Other than *Mizokami* and *Pastewka*, discussed above, Professor Wright cites only *Domingo v. States Marine Lines*, 340 F.Supp. 811 (S.D.N.Y.1972), and

*Anastasiadis v. Mecom*, 265 F.Supp. 959 (S.D.Tex.1966). *Domingo* is arguably in Madam Choo's favor; we discuss it below. In *Anastasiadis*, our brother Ingraham, then on the district bench, dismissed an attempted *in personam* action against the beneficial owner of a vessel on grounds of direct estoppel because a former action in rem against the vessel had been dismissed on a finding that the courts of Greece were its proper forum. Professor Wright concludes:

> Dismissal on *forum non conveniens* grounds does not establish claim preclusion; ordinarily it cannot work issue preclusion as to other courts because the convenience issues are intrinsically different, *but issue preclusion is appropriate if the issue actually remains the same.*

18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4436, at 346 (1981) (emphasis added; footnotes omitted). Here the issue *does* remain the same: a state court in Houston is as convenient or inconvenient a forum for trial of a case from Singapore as a federal court in Houston.

The species of *res judicata* with which we deal today is known as direct estoppel. Judge Gibbons, writing for the Third Circuit in *Pastewka*, states the doctrine clearly:

> The appellants concede, as they must, that had the New York judgment, now final, been on the merits, *res judicata* would bar the Delaware action. But they urge that the policy underlying *res judicata* does not apply to matters in abatement which may involve the exercise of discretion. A nonmerits judgment following a plea in abatement, however, does create a direct estoppel as to matters which were actually adjudicated. This is made clear in the Restatement of Judgments 49, Comment b (1942)....

*Pastewka*, 565 F.2d at 853.[7]

In response to this sparse but persuasive authority, Madam Choo's attorneys cite

---

7. The passage from the Restatement to which Judge Gibbons refers reads:

 *b. Effect of judgment as to issues decided.* Although, where the judgment for the defend-

only *Parsons v. Chesapeake & Ohio Railway Co.*, 375 U.S. 71, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963) (per curiam). *Parsons* held that a state court *forum non conveniens* dismissal is not *res judicata* in a federal court applying 28 U.S.C. § 1404(a), the statutory change-of-venue analogue of *forum non conveniens.* We agree with Judge Gibbons that *Parsons* is not inconsistent with the direct estoppel by judgment rule. *Pastewka*, 565 F.2d at 854. First, *Parsons* points out various considerations material to a state court's *forum non conveniens* analysis that will almost always differ from those informing a federal court's § 1404(a) analysis. For example, the Illinois state court had dismissed the action after finding that the Michigan town where the plaintiff's injury allegedly occurred was the proper forum. The Supreme Court pointed out that there was no federal court in that town; the nearest was 60 miles away. That alone might be a materially different "objective fact" under the standard we announce today. Second, the Supreme Court has recently affirmed explicitly what is implicit in *Parsons:* Section 1404(a) is not a codification of the common law doctrine of *forum non conveniens.* Although *forum non conveniens* analysis is similar, the federal district court has more discretion under the statute than under the common law doctrine. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981). Therefore, issue preclusion is less appropriate in the *Parsons* context.

Our research has uncovered one case that is superficially favorable to Madam Choo. In *Domingo v. States Marine Lines*, 340 F.Supp. 811 (S.D.N.Y.1972), the court dismissed an action by brought against an United States shipowner by

Phillipine citizens. The U.S. ship had collided with and sunk a Phillipine ship in Manila harbor. Many of the plaintiffs had filed the same suit in Delaware and in an earlier suit in the New York state courts. The New York state courts had dismissed the suit as *forum non conveniens*, but the Delaware courts had denied a *forum non conveniens* motion to dismiss. The plaintiffs argued that (only) the Delaware decision was *res judicata*. The federal court disagreed:

> The decision of [the Delaware courts] is not in any way determinative of the issues now before me. These decisions are not *res judicata*, as plaintiff argues, and would not be even if they had been made by the courts of New York, rather than Delaware. *See Parsons v. Chesapeake & Ohio Ry. Co.* Nor do I consider them in any way binding upon me. [Footnote:] It will be remembered that the New York Courts have already decided the question the other way by dismissing one of the actions. . . .

340 F.Supp. at 817 & n. 6 (part of citation omitted). The thrust of this passage is clearly contrary to the authority we have reviewed thus far. But we are comfortable distinguishing *Domingo* on several grounds. First, the district court spent a large part of its analysis expressing concern about its overcrowded docket. 340 F.Supp. at 816. This is the kind of "objective fact" that can undermine an assertion that a prior determination of *forum non conveniens* is *res judicata* in a new forum. Madam Choo, for example, has not alleged differing docket conditions in the federal and state courts in Houston. Second, the court was hardly presented with a compelling case for direct estoppel: the Delaware

---

ant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action. Thus, if the action was dismissed because of the nonjoinder of a third person as defendant, and the plaintiff thereafter brings an action on the same cause of action without joining the third person, the plaintiff is not entitled again to litigate the question whether the third person was a necessary party.

This is an instance of direct estoppel rather than collateral estoppel (see § 68), since the second action is based upon the original cause of action (see § 45(c) and Comment d thereon). The matter actually litigated and determined is *res judicata* between the parties in a subsequent action involving the same matter, whether the subsequent action is based upon the same or a different cause of action.
Restatement (First) of Judgments § 49 comment b (1942); *see also* Restatement (Second) of Judgments § 20 comment b (1982).

courts had decided in favor of the plaintiffs and the New York courts had decided in favor of the defendant on the precise issue presented to the federal court. Finally, the federal district court was sitting in admiralty. As we elaborate below, the special requirement of federal supremacy in matters maritime may justify the district court's refusal to follow decisions made under state notions of *forum non conveniens.*

■■■■ We conclude that once a court of competent jurisdiction has squarely passed on an issue fairly mooted between the same parties, on the merits of the cause or otherwise, that issue may not be relitigated. In the case of *forum non conveniens,* the plaintiff in the new forum must do more than ask for a rebalancing of *forum non conveniens* considerations. He must show objective facts relevant to the issue that materially alter the considerations underlying the previous resolution. Here, in the ordinary case, our inquiry would be complete. Texas law presents a further peculiarity, however, one that drives us to consider larger matters indeed.

### E. The Texas "Open-Forum" Law

Faced with the above, Madam Choo's counsel responds somewhat as follows: "Supposing that the Texas forum is indeed an inconvenient one, and supposing further that the federal court's decision that it is inconvenient would ordinarily settle that matter for state court purposes as well, what prevents a state from throwing open its doors so as to become courthouse to the world? from hearing all cases from anywhere, regardless of how convenient or inconvenient to court, witnesses, or parties?" "And in fact," he continues, "that is exactly what Texas has done for cases involving personal injury and wrongful death." The contention is not fanciful: Since early in this century, Texas has maintained a statute in more or less the form of the present Vernon's Civil Practice and Remedies Code § 71.031:

### § 71.031. Act or Omission Out of State

(a) An Action for damages for the death or personal injury of a citizen of this state, of the United States, or of a foreign country may be enforced in the courts of this state, although the wrongful act, neglect, or default causing the death or injury takes place in a foreign state or country, if:

(1) a law of the foreign state or country or of this state gives a right to maintain an action for damages for the death or injury;

(2) the action is begun in this state within the time provided by the laws of this state for beginning the action; and

(3) in the case of a citizen of a foreign country, the country has equal treaty rights with the United States on behalf of its citizens.

(b) All matters pertaining to procedure in the prosecution or maintenance of the action in the courts of this state are governed by the law of this state.

(c) The court shall apply the rules of substantive law that are appropriate under the facts of the case.

Tex.Civ.Prac. & Rem.Code § 71.031 (Vernon 1986).

No one can say whether Texas courts will place upon this statute the construction for which Madam Choo contends: that Texas has constituted itself the world's forum of final resort, where suit for personal injury or death may always be filed if nowhere else.[8] The Texas Supreme Court has, however, as recently as December 1984 reaffirmed its longstanding view that, although the question is an open one, this may in fact have been the Texas Legislature's intent.

The opinion to which we refer is *Couch v. Chevron International Co.,* 682 S.W.2d 534 (Tex.1984); one that is the more striking by reason of its procedural setting, as

---

**8.** Acquiring personal jurisdiction over some defendants may, of course, present practical difficulties; and at some point considerations of due process are doubtless implicated when a defend-

ant is required to stand trial at the opposite end of the earth from the location of witnesses, site of the accident, etc.

we explain in the margin.[9] There the Texas Court declined review of a judgment for defendant in a Jones Act case strikingly similar to this, one brought to Texas from the offshore oil fields of the North Sea on behalf of Scottish plaintiffs by one of counsel in today's case. After losing a motion to dismiss for *forum non conveniens* in the trial court, the plaintiffs had moved for a new trial on the ground that they were also asserting a claim under Tex.Rev.Civ. Stat.Ann. art. 4678 (Vernon Supp.1984), the preceding codification of § 71.031 quoted above. The trial court denied the motion on the theory that the plaintiffs had waived by delay the right to invoke article 4678. The Texas court of appeals affirmed on the ground that *forum non conveniens* dismissal was appropriate despite the invocation of article 4678. *Couch v. Chevron International Oil Co.*, 672 S.W.2d 16 (Tex.App. —Houston [14th Dist.] 1984). The court of appeals reasoned that, because this was a Jones Act case, federal maritime law applied and, assuming them to be inconsistent, the federal *forum non conveniens* doctrine preempted the statute. The Supreme Court affirmed the judgment. Lest there be any doubt about its reasons for doing so, however, it was at pains to explain that waiver, not *forum non conveniens*, was the basis:

> Responding to the plaintiff's appeal, the defendants urged: (1) that the plaintiffs' failure to timely plead for relief under article 4678 served to waive any right to recover under that statute; and (2) even if plaintiffs properly pleaded an article 4678 cause of action, the doctrine of *forum non conveniens* still would require a dismissal of this cause. In affirming the trial court, the court of appeals chose not to base its decision on the plaintiffs' waiver of the article 4678

cause of action. 672 S.W.2d 16. Rather, the court sustained the defendants' alternative argument that, even if the article 4678 cause of action were pleaded properly, the dismissal for *forum non conveniens* still was correct. *Id.* at 18.

> We refused this writ application, finding no reversible error, because we agreed that the plaintiffs waived their article 4678 cause of action. The court of appeals opinion, however, does not mention this waiver. Although the court of appeals reached the correct decision, that part of its opinion pertaining to article 4678 and *forum non conveniens* is dicta. Thus, the applicability of *forum non conveniens* to an article 4678 cause of action is an open question. *Flaiz v. Moore*, 359 S.W.2d 872, 876 (Tex.1962). Consequently, for the reasons stated, we overrule petitioners' motion for rehearing on the application for writ of error.

*Couch*, 682 S.W.2d at 535. If *Couch* left any doubt that the Texas Supreme Court holds strong views on the technically "open question" of the applicability of *forum non conveniens* to an action under § 71.031, that doubt was all but laid to rest the following year. In *McNutt v. Teledyne Industries, Inc.*, 693 S.W.2d 666 (Tex.App. —Dallas 1985), another court of appeals, pointing to the phrase "may be enforced" in the statute, ruled that Texas courts have discretion to allow or not to allow an action under § 71.031, and that the trial court had not abused its discretion in granting a *forum non conveniens* dismissal. The Texas Supreme Court promptly granted a writ of error, 29 Tex.Sup.Ct.J. 66 (1985), vacating the judgment as moot in December 1985 after the parties settled. The actions of the Texas Court in *Couch* and *McNutt* make clear the substantial likelihood that it will decline to acknowledge the doctrine of

---

9. The Texas Supreme Court, the state's highest civil legal authority, exercises a chiefly discretionary power of review. Unlike the United States Supreme Court, which regularly and unavailingly exhorts those who follow its proceedings to refrain from drawing inferences from its actions denying certiorari, the Texas Court responds to petitions for writ of error with orders of denial which are and are intended to be informative. One such notation is "no reversi-

ble error," which indicates approval of the judgment but not of its reasoning. In recent times, that court has adopted a practice of writing on infrequent occasions to explain its reasons for declining to adopt the reasoning of an opinion although approving its outcome. The opinion cited is one which the Texas Court determined was on an issue sufficiently significant to merit such treatment.

**316**

*forum non conveniens* even in a maritime case governed by federal law. Indeed, *Couch* was such a case.

Madam Choo contends that the existence of § 71.031 precludes *forum non conveniens* analysis in a personal injury or death case filed in a Texas state court; and, given the broad hints thus far dropped by the Texas Supreme Court, it is hard to disagree that this may be its view of the statute. From this premise, she concludes that a *forum non conveniens* dismissal of such an action by a federal court cannot be *res judicata* in a Texas state court because § 71.031 creates a potentially dispositive legal issue that has not yet been fully and finally litigated between the parties. Again, as a general matter, we can find no fault with her logic: When a federal court and a Texas state court have concurrent and *independent* jurisdiction over a personal injury or death action, in the end § 71.031 may well be construed by the Texas Supreme Court to preclude direct estoppel in the state courts by a *forum non conveniens* dismissal in the federal courts.

But this is a maritime case; it does not involve independent actions in the state and federal courts. The state court's jurisdiction is derivative; and it is bound to apply the general maritime law of the United States—a jurisprudence of which federal courts are the custodians, as Texas courts are of Texas law.

### F. *The Uniformity Doctrine and the Supremacy of Maritime Law*

■ Within its sphere of operation, the maritime law of the United States is supreme; and the states are without power to disrupt it:

> [T]he "saving to suitors" clause [now codified at 28 U.S.C. § 1333] allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-Erie" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.

*Offshore Logistics, Inc. v. Tallentire*, —— U.S. ——, ——, 106 S.Ct. 2485, 2495, 91 L.Ed.2d 174 (1986). The Supreme Court laid the foundation of this doctrine in a series of cases 70 years ago. *See Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918); *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920). Although the broad pronouncements of those early cases have been often hedged and qualified, *see, e.g., Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 373–75, 79 S.Ct. 468, 480–81, 3 L.Ed.2d 368 (1959), their core meaning is indisputable. "If there is any sense at all in making maritime law a federal subject, then there must be some limit set to the power of the states to interfere in the field of its working." G. Gilmore & C. Black, *The Law of Admiralty* § 1–17, at 48 (2d ed. 1975).

Like other questions arising under the Supremacy Clause, questions of federal preemption in the maritime context admit of no simple answers. We must turn to precedent for assistance in determining when maritime law preempts inconsistent state laws.

### 1. *The Relation Between Maritime Law and State Law*

The preemption test in the maritime field is usually stated something like this: "Although state law may supplement maritime law where maritime law is silent, or where a local matter is at issue, state law may not be applied where it would conflict with maritime law." *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir.1986) (citations omitted). This test is not very helpful in today's case; the state law under scrutiny is plainly inconsistent with maritime law, and the question is whether the type or degree of inconsistency is objectionable. A better definition for present purposes appears in an earlier decision of our Court:

> Although state law may occasionally be utilized to fill the gaps in an incomplete and less than perfect maritime system it

cannot be employed to contravene an act of Congress, to prejudice the characteristic features of the maritime law or to disrupt the harmony it strives to bring to international and interstate relations.

*J. Ray McDermott & Co. v. The Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.) (en banc) (Ship Mortgage Act need not be supplemented by state law), *cert. denied*, 409 U.S. 948, 93 S.Ct. 271, 34 L.Ed.2d 218 (1972). This test contains several concrete ideas. First, state law can be used to "fill the gaps" of maritime law; the implication is that the state law provides detailed distinctions that are absent from and of little or no concern to maritime law. Second, state law is less likely to be used to supplement maritime legislation. The idea here is partly that Congress is supreme in matters maritime and partly that legislation is more likely than judge-made law to be complete and self-sufficient. *Cf. Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (DOSHA may not be supplemented by judge-made recovery rules). Consequently, any inconsistent state law is likely to conflict with statutory maritime law—to be inconsistent in the preemptive sense. Third, state law inconsistent with the "characteristic features" of the maritime law is preempted in an admiralty case. Finally, as in other areas of federal preemption, state law is preempted by maritime law if it affects international or interstate relations. With the aid of this definition and our own research in the cases, we have identified five factors—more accurately, five concepts or clusters of ideas—that inform maritime preemption analysis. The first and second factors cut toward the application of state law, the fourth and third toward preemption, and the fifth cuts in both directions indiscriminately.

■ The first factor is that state law is not preempted when it contains a detailed scheme to fill a gap in maritime law. In *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), for example, the Supreme Court noted that there was no federal admiralty law to govern the application of terms and warranties in a marine insurance contract. The Court decided that the maritime court should apply state law instead of creating a uniform maritime law of insurance contracts. Although this decision has been severely criticized by commentators, *see, e.g.,* Gilmore & Black, § 1–17, at 48–49, the Supreme Court reasonably believed that more uncertainty would result from the case-by-case creation from whole cloth of a federal maritime insurance law than from the application of a variety of already well-developed state laws. 348 U.S. at 319, 75 S.Ct. at 373.

The second factor is that state law is not preempted when the law regulates behavior in which the state has an especially strong interest. The venerable phrase "police power" is often used to express this overriding interest in self-regulation. *See, e.g., Askew v. American Waterways Operators*, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1972) (Florida oil spill regulations); *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. at 316–19, 75 S.Ct. at 371–73 (traditional and plenary state power to regulate all forms of insurance). The "maritime but local" idea is a corollary: the state interest, whatever its magnitude, is viewed as greater than any maritime concern. See, e.g., *Grant-Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed.2d 321 (1922) (carpenter injured while building ship on navigable waters cannot bring an action in admiralty but is restricted to state workman's compensation); *cf. Kamani v. Port of Houston Authority*, 702 F.2d 612, 614 (5th Cir.1983) (action by longshoreman working aboard ship; remanding question whether state or maritime statute of limitations should apply to maritime action brought against state under the Texas Tort Claims Act).

The third factor is that maritime law preempts whenever a uniform rule will facilitate maritime commerce, or, conversely, when non-uniform regulation will work a material disadvantage to commercial actors. This notion is sometimes simply referred to as the need for uniformity, but uniformity is obviously not an end in itself or else state law would *always* be preempted. A corollary of this concept is the no-

tion found in the *J. Ray McDermott & Co.* test of "characteristic features" or core principles of the maritime law. 457 F.2d at 818. Applying state law inconsistent with "characteristic features" would defeat the reasonably settled expectations of maritime actors. The most striking example of the importance of uniformity is *Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (overruling one hundred-year-old precedent to create a uniform maritime action for wrongful death in territorial waters).[10] Since uniformity is related to predictability and to reasonable legal expectations, it is of greatest importance when legal relations are not predictably related to a certain locale and its laws. The *Moragne* Court ridiculed the fluctuating rights and responsibilities of shipowners and crew under the *Harrisburg-Tungus*[11] regime as a ship sailed blithely through waters covered by DOSHA, territorial waters of states that gave wrongful death remedies, and waters of states that did not. Compare this to the *Wilburn Boat* maritime insurance contract made in Texas, covering a boat on the inland waters of Texas, with an eventual suit on the contract in Texas state court, removed to federal.

The fourth factor is that maritime law preempts state law when the state law impinges on international or interstate relations. This concept is so basic to federal maritime jurisdiction that we find only generalized statements and no disputes about it in the cases. But there are powerful analogies in other areas of preemption doctrine that reflect the sovereign power of the federal government to regulate foreign relations and relations between the states. For example, state regulation of both resident and nonresident aliens is frequently held preempted by federal law even when the state law is not inconsistent with any particular federal law. *See, e.g., Toll v. Moreno,* 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982) (state university may not charge resident aliens out-of-state tuition even though aliens are exempt from state taxation by federal law); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (state restrictions on welfare benefits available to resident aliens preempted by federal authority to regulate immigration). And this is so regardless of the fact that traditional areas of state regulation and powerful state interests are involved. *See Zschernig v. Miller,* 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968) (Oregon inheritance statute requiring state judicial inquiry into relation between nonresident aliens and their country of domicile is an invalid intrusion by the state into foreign affairs). Matters of import to foreign relations are inherently matters of uniquely federal competence. *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 425, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964) (federal "act of state" doctrine applied in a diversity case; "ordering our relationships with other members of the international community must be treated exclusively as an aspect of federal law").

The final factor, stated baldly, is that plaintiffs should win personal injury or death maritime tort claims. This concept points indiscriminately toward state or federal law depending on the case. It was one important technique used by the Supreme Court and lower courts during the 1950s and 1960s to keep admiralty law in line with the land-side revolution in tort law. *See* Gilmore & Black, § 6–61, at 463–68. Instead of constantly liberalizing maritime law, the federal courts would allow state law to control if the result was favorable to the plaintiff. Presently, this thumb-on-the-scales concept is on the decline in maritime law.[12] The old revolution is now fixed as

---

**10.** *Moragne* can also be viewed as the last in a series of Supreme Court decisions driven by the final factor: maritime plaintiffs should win. *See* Gilmore & Black, § 6–61, at 465–66.

**11.** The *Tungus v. Skovgaard,* 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959) (state laws giving action for wrongful death on territorial waters can be enforced in admiralty); *The Harrisburg,*

119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886) (by analogy to common law, no maritime action for wrongful death).

**12.** *See, e.g., Branch v. Schumann,* 445 F.2d 175, 178 (5th Cir.1971) (Florida may not impose higher standard of care on owner-operator of a motorboat than the "reasonableness" standard of general maritime law); *cf. Byrd v. Byrd,* 657

the new orthodoxy; and we have begun to doubt both the wisdom of further change and our institutional competency to undertake it. *See State of Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1032–34 (5th Cir.1985) (en banc) (Gee, J., concurring), *cert. denied,* —— U.S. ——, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986). We do not consider it in our analysis below.

### 2. Forum Non Conveniens *and State Law*

The next question is whether under these standards § 71.031, the Texas "open-forum" law, is preempted by maritime *forum non conveniens* doctrine in a maritime case brought by a non-resident alien. But first we face one twist. The traditional view of concurrent state jurisdiction over maritime matters under the "saving to suitors" clause is that states are free to apply their own common law "remedies" as long as substantive maritime law governs. *See Chelentis*, 247 U.S. at 382, 38 S.Ct. at 504 ("The distinction between rights and remedies is fundamental."); *cf. Offshore Logistics,* —— U.S. at ——, 106 S.Ct. at 2495 (states' "substantive remedies" must conform to maritime standards). It has been universally and correctly assumed that state procedural rules govern actions in state courts under the "saving to suitors" clause—the "reverse-*Erie*" metaphor captures this assumption perfectly. Some courts have held that *forum non conveniens* is "procedural" for *Erie* purposes. *See, e.g., Sibaja v. Dow Chemical Co.*, 757 F.2d 1215 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 347, 88 L.Ed.2d 294 (1986). Therefore, if the "reverse-*Erie*" doctrine is perfectly symmetrical, it follows that state courts are not obligated to apply federal *forum non conveniens* analysis in maritime cases.

We reject this facile syllogism; drawing conclusions from metaphors is dangerous.

The reason that state court procedures are not preempted by maritime law is that they almost never—before this case we might rashly have said "never"—conflict with it. When they do, however, it is clear that they must yield. Among several examples of this rule that might be cited is *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). In that case an injured seaman, having first released his claim, later brought a Jones Act suit on it in the state courts of Pennsylvania. The state court, applying its rule that one who attacks the validity of a written release has the burden of proof—and a heavy one at that—gave judgment for the defendant despite a jury verdict favorable to the seaman. On resort to it, the Pennsylvania Supreme Court drew precisely the substance/procedure line, concluding that "the rule as to burden of proof on releases does not affect the substantive rights of the parties, but is merely procedural, and is therefore controlled by state law." 317 U.S. at 242, 63 S.Ct. at 249. Speaking through Justice Black, a unanimous Supreme Court reversed and directed that the more lenient (to the seaman) federal procedural rule must be applied: that in establishing the validity of a seaman's release the burden of proof—and a heavy one at that—is on the person who relies on it.

Because the *Erie* diversity doctrine and the "reverse-*Erie*" maritime doctrine spring from distinct principles and policies, there is no reason to expect a perfect symmetry between them. In the *Erie* context, the substance/procedure dichotomy is simply shorthand for distinctions that must be drawn on the basis of policies underlying the doctrine.[13] The "reverse-*Erie*" question is whether the inconsistent state law, whether deemed a matter of substance or procedure, conflicts with maritime law. Therefore, the question of the effect on

F.2d 615, 617–18 (4th Cir.1981) (admiralty court should not apply Virginia inter-spousal immunity doctrine; trend is away from this immunity; state law should not be applied "where its application would defeat an otherwise meritorious cause of action") (citing cases).

13. For example, federal courts sometimes follow state "procedural" rules in diversity cases. *See, e.g., Conway v. Chemical Leaman Lines, Inc.,* 540 F.2d 837 (5th Cir.1976) (applying Texas evidence rule that evidence of widow's ceremonial remarriage is admissible in wrongful death action).

§ 71.031 remains, and we must analyze it under the framework set out above.

It is obvious from the factors which we have outlined that § 71.031 loses on all counts. Federal *forum non conveniens* analysis must preempt § 71.031 in a maritime suit by an alien in Texas courts. The first factor—using state law to fill gaps—is inapplicable at best. This factor actually cuts towards federal law because *forum non conveniens* is well-articulated federal doctrine while the meaning of § 71.031 is not yet settled. The second factor—"police power" or "maritime but local" state interests—gives the state law little support in this context. While Texas has an undeniably powerful interest in defining the jurisdiction of its courts, its interest in the substance of claims by non-resident aliens arising from activities in foreign lands cannot be considered strong. By its terms, the statute applies only to a "wrongful act, neglect, or default causing the death or injury [when it] *takes place in a foreign state or country.*" § 71.031(a) (emphasis added). This conclusion is reinforced by the circumstance that the defendant in a maritime claim involving § 71.031 need not reside in Texas. In the context of international maritime commerce, the defendants are just as likely to be aliens as are the plaintiffs.

The third factor—uniformity and predictability of maritime law—points forcefully toward preemption. *Forum non conveniens* is a "characteristic feature" of maritime law. The doctrine has its roots in the maritime law, *see generally* Bickel, *The Doctrine of Forum Non Conveniens as Applied in the Federal Courts in Matters of Admiralty*, 35 Cornell L.Rev. 12 (1949), and appeared in maritime cases in the federal courts shortly after their birth. *See*

*Mason v. The Ship Blaireau*, 6 U.S. (2 Cranch) 240, 264, 2 L.Ed. 266 (1804).[14] When the Supreme Court first introduced *forum non conveniens* analysis into the mainstream of federal jurisprudence, the dissenters argued that the doctrine should be confined to the admiralty and equity courts from whence it came. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 513–15, 67 S.Ct. 839, 845–46, 91 L.Ed. 1055 (1947) (Black, J., dissenting). As we elaborate below, the need for uniform application of the doctrine by all courts in the United States is particularly acute because of the transnational and international nature of the interests at stake in a *forum non conveniens* inquiry. Even standing alone, these theoretical considerations might lead us to conclude that any state law inconsistent with the doctrine should be preempted; but there are powerful practical reasons as well.

If the Texas courts interpret § 71.031 to require them to take jurisdiction over cases to which it applies, maritime actors throughout the world will be subject to suit in the state courts of Texas on claims arising around the world as long as they have sufficient contacts here for personal jurisdiction to be had. They will be available for suit even if they are aliens, the plaintiffs are aliens, and the transaction complained of by the plaintiff has no relation whatever either to Texas or to the United States. Furthermore, if such a § 71.031 case can be removed to the district court, then federal *forum non conveniens* may be applied and the case dismissed. *See, e.g., Sibaja v. Dow Chemical Co.*, 757 F.2d at 1219. Thus crucial aspects of the outcome of the litigation will turn on the fortuities of diversity. To make matters worse, the holding of our Court in an earlier phase

14. In this case, a preliminary question has been made by the counsel for the plaintiffs, which ought not to be disregarded. As the parties interested, except for the owners of the cargo of the Firm, are not Americans, a doubt has been suggested respecting the jurisdiction of the court, and upon a reference to the authorities, the point does not appear to have been ever settled. These doubts seem rather founded on the idea, that upon principles of general policy, this court ought not to take

cognisance of a case entirely between foreigners, than from any positive incapacity to do so. On weighing the considerations drawn from public convenience, those in favor of the jurisdiction appear much to overbalance those against it, and it is the opinion of this court, that, whatever doubts may exist in a case where the jurisdiction may be objected to, there ought to be none, where the parties assent to it.
6 U.S. (2 Cranch) at 264 (Marshall, C.J.).

of this litigation means that actions between an alien plaintiff and an alien defendant in the courts of Texas will not be removable while those involving an alien plaintiff and a United States defendant undoubtedly will be removed and often dismissed for *forum non conveniens*. *See Choo II*, 764 F.2d at 1152 (no diversity jurisdiction in suit between aliens). If § 71.031 is interpreted as Madam Choo urges, its general effect will be the random, unpredictable availability of Texas courts to foreign plaintiffs depending on the requirements of the statute and the contacts of the defendants with Texas. The non-removability of Jones Act claims is one more significant variable in this bizarre jurisdictional equation. Add in the ability of *domestic* defendants—but not alien defendants—to remove non-Jones Act cases to federal court and have the action dismissed, and the effect of § 71.031 becomes positively irrational. We cannot tolerate this pointless intrusion on the basic uniformity of the maritime law.

*G. Federal* Forum Non Conveniens: *Balancing Private Interests and International Effects*

Finally, the fourth factor—plenary federal power over international relations—powerfully confirms our conclusion that federal *forum non conveniens* doctrine must apply to maritime cases in state courts.

 Federal law controls the international role of all courts in the United States. *See Zschernig v. Miller*, 389 U.S. 429, 436, 88 S.Ct. 664, 668, 19 L.Ed.2d 683 (1968) (state court inquiries into the internal affairs of foreign nations intrude on exclusive federal power over foreign affairs and international relations and are unconstitutional under the Supremacy Clause). In *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), for example, the Supreme Court went out of its way entirely to observe that the federal "act of state" doctrine must apply even though that case was brought into the federal courts in New York by diversity of citizenship and New York recognized an "act of state" doctrine all but

identical to the federal one. The "act of state" doctrine, like the doctrine of *forum non conveniens*, is a prudential doctrine of judicial self-limitation in an international context. *See* R. Falk, *The Role of Domestic Courts in the International Legal Order 9* (1964) (the "decision to defer [under the act of state doctrine] is a way of explaining that a domestic court is not a suitable forum within which to make the determination of validity. In this respect, the act of state doctrine resembles the doctrine of *forum non conveniens.*"). The Foreign Sovereign Immunities Act is another example of the supremacy of federal law when international interests are implicated: it necessarily preempts inconsistent state laws because it must be applied in *all* U.S. courts, state and federal. *See* 28 U.S.C. § 1602 *et seq.*

Federal foreign policy interests do not disappear when purely private foreign parties come before U.S. courts. Even in the seemingly domestic setting of a third-party indemnification complaint in a products liability case, the Supreme Court has recently commanded the state courts to rethink their analysis of personal jurisdiction in light of the inherent foreign policy implications:

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens of an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *United States v. First National City Bank*, 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting).

*Asahi Metal Industry Co. v. Superior Court of California, Solano City*, — U.S. —, —, 107 S.Ct. 1026, 1034–35, 94 L.Ed.2d 92 (1987). In situation after situa-

tion, Congress and the Supreme Court have made the availability of courts in the United States to foreign plaintiffs and against foreign defendants exclusively a matter of federal law, and they have consistently mandated self-restraint in asserting jurisdiction over arguably foreign disputes.

As we have noted, the doctrine of *forum non conveniens* arises from and has long been a part of the maritime law of this nation. This should not be surprising, considering that the inherently transnational nature of shipping creates international controversies; maritime actors, by the nature of their business, cannot avoid sufficient "minimum contacts" to subject themselves to the jurisdiction of many nations. These jurisdictional minima are not enough to protect maritime actors:

> [T]he virtue and utility of sea-borne commerce lies in its frequent and important contacts with more than one country. If, to serve some immediate interest, the courts of each were to exploit every such contact to the limit of its power, it is not difficult to see that a multiplicity of conflicting and overlapping burdens would blight international carriage by sea.

*Lauritzen v. Larsen,* 345 U.S. 571, 581, 73 S.Ct. 921, 927, 97 L.Ed. 1254 (1953). By comparison, non-maritime commercial actors can do a huge volume of business in the United States without subjecting themselves to jurisdiction by simply avoiding direct territorial contacts. *See Asahi Metal Industry Co.* (assertion of jurisdiction over Japanese manufacturer of tire valves by California violates due process; despite large number of sales in California of tire tubes incorporating its valves, Japanese valve maker does not directly solicit business or make sales there). When foreign and domestic admiralty defendants are ha-

led into court in the United States, our maritime law has long afforded them many protections, including the "defense of inconvenience," to avoid having to defend themselves in the United States against claims under U.S. law when a more optimal forum or more appropriate law is available.[15] It is precisely one crucial prudential choice—the convenience of the forum and its fairness to the admiralty defendant in the international context—that the Texas statute appears to abrogate.

The Supreme Court has fought a long maritime battle against the kind of parochial thinking embodied in the Texas "open-forum" law. In *Lauritzen,* for example, the Court gave a limiting reading to the all-inclusive language of the Jones Act because of considerations of comity and self-restraint.

> [C]ourts of this and other commercial nations have generally deferred to a non-national or international maritime law of impressive maturity and universality. It has the force of law, not from extra-territorial reach of national laws, nor from the abdication of its sovereign powers by any nation, but from acceptance by common consent of civilized communities of rules designed to foster amicable and workable commercial relations.

International or maritime law in such matters as this does not seek uniformity and does not purport to restrict any nation from making and altering its laws to govern its own shipping and territory. However, it aims at stability and order through usages which considerations of comity, reciprocity and long-range interest have developed to define the domain which each nation will claim as its own.... [I]n dealing with international

---

**15.** Domestic maritime defendants operate in an international context, and the reasons behind the rule of *forum non conveniens* apply to their extraterritorial activities with equal force. In discussing the related problem of the extraterritorial reach of domestic law, Professor Richard Falk has written:

> Rare use is made of the competence conferred upon a state by the nationality principle [of legislative and adjudicative jurisdiction]. This generally spares Americans abroad from the burden of conforming to a legal standard

in addition to the one established by the territorial state. It also saves the United States from making inconvenient assertions of legal control in which the tribunal would find itself often quite remote from the evidence, the context of the occurrence, and witnesses.... This encourages a reciprocal deference and simplifies the legal superstructure of the private lives of those who cross borders.

R. Falk, *The Role of Domestic Courts in the International Legal Order* 40 (1964).

commerce we cannot be unmindful of the necessity for mutual forbearance if retaliations are to be avoided; nor should we forget that any contact which we hold sufficient to warrant application of our law to a foreign transaction will logically be as strong a warrant for a foreign country to apply its law to an American transaction.

*Lauritzen,* 345 U.S. at 581–82, 73 S.Ct. at 927–28 (footnotes omitted). All of this cautionary language in Lauritzen obviously applies with equal force in the *forum non conveniens* context.

Twenty years later the Supreme Court was still chiding the lower courts about their tendency to accept admiralty jurisdiction over everything. Our court had refused to enforce a choice-of-forum clause in a contract between sophisticated international maritime businesses. The Court rebuked us:

> The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.... [I]n an era of expanding, world trade and commerce, the absolute aspects of the doctrine [that choice-of-forum clauses are unenforceable] have little place and would be a heavy hand indeed on the future development of international commercial dealings by Americans. We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.

*M/S BREMEN v. Zapata Off-Shore Co.,* 407 U.S. 1, 9, 92 S.Ct. 1907, 1912, 32 L.Ed.2d 519 (1972).

The *Lauritzen* and *Zapata* cases are two examples of a clear national policy of judicial self-restraint in the maritime field. Federal maritime law tries to implement a policy balanced between allowing aliens to sue in our courts and under our laws when appropriate while rejecting attempts to make the United States the forum and lawmaker for the world's maritime defendants. The Texas "open-forum" law, on the other hand, could make one of the united states an open world forum, and with that would follow distorting effects on international commerce and regulation. Ultimately § 71.031, if Madam Choo's interpretation is an accurate prediction of Texas law, could hardly fail to affect foreign relations, as the Texas courts entertain actions by aliens against aliens for occurrences on alien soil or waters in derogation of the judicial and administrative power of the domicilliary countries and the place of the wrong. The doctrine of *forum non conveniens* is the heart and soul of the federal policy of judicial self-restraint in the day-to-day workings of the maritime law. Texas cannot be allowed to thwart that policy in a maritime case brought to its courts.[16]

Not long ago, Congress amended the Jones Act to deny a cause of action to foreign workers injured while engaging in the offshore exploration or development of mineral or energy resources in foreign waters, unless the person bringing the action is able to establish that there is no other remedy available. *See* 46 U.S.C. § 688(b) (as amended by Pub.L. No. 97–389, 96 Stat. 1949, 1955, § 503(a) (1982)). The legislative history makes it clear that Congress intended to codify judicial decisions dismissing claims under the Jones Act by foreign offshore workers under the doctrine of *forum non conveniens. See Vaz Borralho v. Keydril Co.,* 710 F.2d 207, 210–11 (5th

**16.** *Forum non conveniens* is sometimes viewed as a discretionary doctrine that focuses on the forum's own interest in the matter. The idea is that each forum must look primarily to its own interests to decide whether it is an inconvenient place to try a pending lawsuit. From this premise, Madam Choo concludes that federal law should not control the Texas courts' determination of convenience or inconvenience in a given case. We agree. Federal courts may not enjoin or even second-guess a state court that has exer-

cised its discretion to either retain or dismiss a maritime case after applying the maritime *forum non conveniens* law, whatever the result. Our argument goes to whether the Texas *legislature* should be allowed to prohibit its courts from performing their discretionary duties under the federal maritime law. It is the peculiar *res judicata* posture of this case that absolutely forecloses further consideration of it by the Texas state courts.

Cir.1983). We assume that no one would dare argue that the Texas courts could refuse to dismiss a Jones Act claim barred by § 688(b) under the authority of § 71.-031. Why should the result be any different when the federal maritime law at issue is judge-made rather than statutory?

## H. Conclusion

Today we must decide whether Texas may apply § 71.031 in maritime cases brought in her courts. The district court's injunction of the state proceeding is proper if and only if the original federal court determination of the parties' rights and obligations is *res judicata*; and the federal judgment is *res judicata* if and only if the Texas courts are *not* free to apply their "open-forum" law to actions that come within the maritime jurisdiction of the federal courts. Our concern, however, is broader than the narrow facts of this case.

In *Kassapas v. Akron Shipping Agency, Inc.*, 485 So.2d 565 (La.Ct.App. 5th Cir.), *writ denied*, 488 So.2d 203 (La.1986), a Louisiana Court of Appeal reversed a trial court's dismissal of a maritime case on the ground of *forum non conveniens*. The plaintiffs originally sued for wrongful death under the Jones Act and the general maritime law of the United States in the federal district court for the Southern District of New York. The district court noted that the plaintiffs and the plaintiffs' decedents were Greek, the owner of the vessel was a Liberian corporation with its principal place of business in Greece, the manager of the vessel was a Greek corporation, the charterer was a Panamanian corporation, and the deaths were alleged to have occurred in the port of Leningrad in the Soviet Union. The district court held that it was a *forum non conveniens* and conditionally dismissed the case. *Kassapas v.*

*Arkon Shipping Agency, Inc.*, 578 F.Supp. 400 (S.D.N.Y.), *aff'd mem.* 738 F.2d 418 (2d Cir.1984).[17] After the dismissal by the federal district court, the plaintiffs found the vessel in Jefferson Parish, and brought the identical claims in the state courts of Louisiana. The trial court dismissed the action as *forum non conveniens*. The state Court of Appeal reversed, citing dubious federal authority for the proposition that *forum non conveniens* is "procedural," [18] and holding that the doctrine is not recognized in Louisiana law and could not be applied by the trial court. As we have shown, *Kassapas* was wrong. We are concerned that two major maritime states in this Circuit appear to be willing to disregard federal *forum non conveniens* doctrine in maritime cases brought to their courts.

For all these reasons, we reject Madam Choo's argument that § 71.031 overrides *forum non conveniens* analysis in this case and that the deferral of her claims to Singapore by the federal court is not *res judicata* in a Texas state court. Under the federal uniformity doctrine state courts *must* apply the *forum non conveniens* rule of the general maritime law in any case brought before them by citizens of foreign lands over which the federal courts would have admiralty jurisdiction. State law inconsistent with that doctrine cannot be applied in a maritime case. *Accord Couch v. Chevron International Oil Co.*, 672 S.W.2d 16 (Tex.App.—Houston [14th Dist.] 1984 writ ref'd, n.r.e.); *but cf. Couch v. Chevron International Co.*, 682 S.W.2d 534 (Tex.1984); *contra Kassapas*, 485 So.2d at 567. Therefore, we affirm the district court's injunction of the state court proceeding as *res judicata* on the ground that Texas may not apply its "open-forum" law in a maritime case and there is no

17. As of the date of this opinion, none of the citation services—Shepard's, Westlaw, or Lexis—shows the Second Circuit's affirmance of this case. The Second Circuit clerk's office has confirmed that the unpublished opinion of May 23, 1984 (Docket No. 84–7196, listed at 738 F.2d 418), affirmed the February 8, 1984, Memorandum and Order (Docket No. 82 Civ. 6954 (MP), reported at 578 F.Supp. 400).

18. The *Kassapas* court cites *Missouri ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950), for the proposition that *forum non conveniens* is a "procedural" device. *Mayfield* held that states were not compelled by federal law to retain jurisdiction over FELA cases that would be dismissed under an impartially applied *forum non conveniens* doctrine of state law.

other new issue to be litigated. It is time for this litigation to come to an end in the United States and to return to Singapore, where it belongs. Because of the complexity of this case, the sanctions against Madam Choo's attorneys are DISSOLVED, but the issuance of the permanent injunction by the district court is AFFIRMED.

CLARK, Chief Judge, concurring:

I concur in the result reached by Judge Gee because it upholds the district court's order, the pertinent part of which is set out in the margin.[1] The federal court heard the parties, considered the matters before it and reached a decision that the contested issues should not be litigated in Houston in the interest of justice. That decision was not appealed and became final and binding as between the parties. All proceedings in that case were closed. The district court did no more than order *parties* that had been subject to its jurisdiction to give effect to the adjudication of an issue raised by and finally decided as between them. The jurisdiction that court undeniably had at the time the adjudication was made confers the inherent power to effectuate that final decision. I recognize that injunctions addressed to parties can impact on courts in which they litigate and that federal law limits such intrusions. 28 U.S.C. § 2283. However, the exercise of the power to effectuate a judgment is an express exception to the limiting force of § 2283. More importantly, this case presents no reason to draw courts or court systems into what is essentially no more than an attempt by a dissatisfied litigant to thwart a binding order she does not like.

Today's dispute does not implicate Texas courts or Texas law. It could be resolved entirely within the perimeters of the federal forum. Since Choo has acted to violate a final, binding order of the federal court, entered at a time when both parties were subject to its jurisdiction, that court can order them to end the violation. The fact that Texas courts might not use the same principles of adjudication furnishes only the condition that permits the violation to occur. Texas may permit, but it surely does not require, that Choo use its courts. No vested right to try this case in a Texas court in Houston is impaired by the federal forum's protection of its judgment. There is no need to raise or resolve questions of sovereignty, preemption, comity or *res judicata.*

Assuming *arguendo* that the power of this court to protect or effectuate its final judgment somehow does not extend to proscribing subsequent, negating acts of parties over whom it had jurisdiction, I agree with Judge Gee that the maritime nature of the order entered in the present controversy would preempt the inconsistent exercise of state court jurisdiction.

REAVLEY, Circuit Judge, dissenting:

It is for the Texas court to decide its own forum convenience and to identify the issues subsidiary to that determination. Texas law may permit the *Choo* case to be entertained without regard to any issue resolved by the federal court. This court is not entitled to say otherwise, though my colleagues do just that.

Contrary to what Chief Judge Clark says, Choo has not violated a final, binding order of the federal court. The court merely dismissed her case, without prejudice, for *forum non conveniens* reasons. The court did not adjudicate Choo's right to bring her action in Texas state courts.

The majority are prepared to announce a bold new rule of preemption and to nullify the Texas open forum law for admiralty cases. If that be good law, this is not the

1. "ORDERED that Chick Kam Choo and her attorneys, Benton Musslewhite and Joseph C. Blanks, be and are hereby permanently enjoined from prosecuting or commencing any causes of action or claims against Exxon Corporation and/or Esso Tankers, Inc., in the courts of the State of Texas or any other state, and in particular Cause No. 84–00125 pending in the 270th District Court of Harris County, Texas, arising out of or related to the alleged wrongful death of Leong Chong, which occurred onboard the Tanker ESSO WILHELMSHAVEN on or about March 24, 1977, in Singapore. This Injunctive Order is binding upon and applies with equal force to the Defendants, their agents, servants and upon those persons in active consent or participation with them."

time or place to declare it. I would prefer that the Texas courts decide Texas law, and that another court, preferably the Supreme Court, after full consideration, decide whether to sweep so far.

The Court tells us that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 246 (1970). My colleagues fail to heed. I dissent.